THE NOR'EASTER GROUP, INC. *v.* COLOSSALE
CONCRETE, INC., ET AL.
(13291)

HEALEY, SHEA, CALLAHAN, GLASS and HULL, Js.

Argued February 9—decision released May 17, 1988

*Mark A. Dubois,* with whom, on the brief, was *Nancy Brouillet,* for the appellants (defendants).

*James D. Hirschfield,* for the appellee (plaintiff).

CALLAHAN, J. This is a contract action brought pursuant to General Statutes § 49-42[1] by the plaintiff, The

---

[1] General Statutes § 49-42 provides: "SUIT ON BOND; WHEN AND HOW BROUGHT. (a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which a payment bond is furnished under the provisions of section 49-41 and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which the claim is made, has the right to sue on the payment bond for the amount, or the balance thereof, unpaid at the time of institution of the suit and to prosecute the action to final execution and judgment for the sum or sums justly due him. Any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing the payment bond shall have a right of action upon the payment bond upon giving written notice to such contractor within ninety days from the date on which the person performed the last of the labor or furnished or supplied the last of the material for which the claim is made, stating with substantial accuracy the amount claimed and the name of the party

Nor'easter Group, Inc. (Nor'easter), a subcontractor, to recover a balance due for labor and material furnished in the construction of a municipal swimming pool for the city of Torrington. The action was brought on a payment bond against Colossale Concrete, Inc. (Colossale), the general contractor and principal on the bond, and the Continental Casualty Co. (Continental), the surety.

Colossale, as general contractor, built the pool pursuant to a contract with the city of Torrington. Pursuant to an agreement with the defendant Colossale, the plaintiff, a swimming pool contractor, was to supply the labor and material for the installation of a stainless steel overflow system, drain piping, and forms for a gutter groove channel in connection with the pool construction. In conformity with General Statutes § 49-41[2]

to whom the material was furnished or supplied or for whom the labor was done or performed. That notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business or at his residence.

"(b) Every suit instituted under this section shall be brought in the name of the person suing, in the superior court for the judicial district where the contract was to be performed, irrespective of the amount in controversy in the suit, but no such suit may be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him.

"(c) The word 'material' as used in sections 49-41 to 49-43, inclusive, includes the rental of equipment used in the prosecution of work provided for in the contract."

[2] General Statutes (Rev. to 1981) § 49-41 provides: "PUBLIC STRUCTURES. BONDS FOR PROTECTION OF EMPLOYEES AND MATERIALMEN. (a) Before any contract exceeding one thousand dollars in amount for the construction, alteration or repair of any public building or public work of the state or of any subdivision thereof is awarded to any person, that person shall furnish to the state or the subdivision a bond in the amount of the contract which shall be binding upon the award of the contract to that person, with a surety or sureties satisfactory to the officer awarding the contract, for the protection of persons supplying labor or materials in the prosecution of the work provided in the contract for the use of each such person. Nothing in this section or sections 49-41a to 49-43, inclusive, shall be construed to limit the authority of any contracting officer to require a performance bond or other security in addition to the bond herein referred to."

the defendant Colossale, as principal, and the defendant Continental, as surety, furnished a bond in the amount of $230,000 guaranteeing payment to subcontractors supplying labor and material to the project.

The plaintiff alleged that it had performed labor and furnished material for the pool project commencing in October, 1982, and terminating in July, 1984. At trial, through its president, Walter Liff, the plaintiff offered evidence that it had properly completed its portion of the Torrington pool contract and that there remained a balance due it of $25,817.84. It is undisputed that this balance remained unpaid for more than ninety days after the plaintiff last supplied labor or material to the job, before Nor'easter commenced suit under § 49-42 in October, 1984.

The defendant's president, Dominic Colossale, testified that Colossale had not paid the balance due on its contract with the plaintiff because the plaintiff's work was defective. He claimed that there were leaks in two of the drains installed by the plaintiff and that the city of Torrington would not accept the pool or pay Colossale the unpaid balance of approximately $75,000 on Colossale's contract with the city until the leaks were fixed. Dominic Colossale also testified that it had cost his company considerable money to locate the leaks and that he and others had attempted, without success, over a period of three years, to induce the plaintiff to correct the problems.

The trial court found for the plaintiff and rendered judgment for Nor'easter to recover from the defendants the total amount claimed of $25,817.84 together with costs and interest at the legal rate from July 6, 1984.

On appeal, the defendants claim that the trial court erred in: (1) awarding damages to the plaintiff when it had found for the defendants "on the issue of per-

formance by the plaintiff"; (2) finding for the plaintiff despite the fact that it did not comply with the notice provision of General Statutes § 49-41a (b); and (3) awarding the plaintiff interest on the judgment.

I

The defendants first claim that the plaintiff cannot prevail because the trial court resolved the question of whether the plaintiff had performed its obligations under the contract with Colossale in the defendants' favor. That simply is not so. It is true that at the beginning of its memorandum of decision the trial court appears to have found "that the drains which Nor'easter had installed were leaking."[3] It went on in its memorandum, however, to determine "that the plaintiff has in fact established its right to recover against Colossale" and rendered judgment for the plaintiff for the full amount of its claim.[4] This seeming contradiction was clarified and resolved in the plaintiff's favor by the trial court's response to the plaintiff's subsequent motion for articulation. Therein the trial court stated that it had found "(A) . . . that the plaintiff substantially performed its obligation under its contract with the defendant Colossale [and] (B) . . . that the defendant Colossale failed to establish that a leak in the pool drain system was caused by the negligence or improper workmanship of the plaintiff Nor'easter."

Whether a building contract has been substantially performed is ordinarily a question of fact for the trier to determine. *Edens* v. *Kole Construction Co.,* 188 Conn. 489, 494, 450 A.2d 1161 (1982); *Randolph Con-*

---

[3] It is somewhat unclear as to whether, at this point in its memorandum of decision, the trial court actually made a finding of fact or whether it was simply reiterating the various claims of the parties.

[4] The trial court's memorandum of decision was principally concerned with the jurisdictional question of whether the plaintiff was required to give notice under General Statutes § 49-41a (b) in order to commence suit against the defendant under General Statutes § 49-42. See part II, infra.

*struction Co.* v. *Kings East Corporation,* 165 Conn. 269, 274, 334 A.2d 464 (1973); *Chinigo* v. *Ehrenberg,* 112 Conn. 381, 384, 152 A. 305 (1930). The resolution of conflicting factual claims falls within the province of the trial court. *Edens* v. *Kole Construction Co.,* supra 495; *Fairfield County National Bank* v. *DeMichely,* 185 Conn. 463, 466, 441 A.2d 569 (1981). "The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. Practice Book § 3060D; *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Machine, Inc.,* 184 Conn. 10, 17, 441 A.2d 43 (1981); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." *Edens* v. *Kole Construction Co.,* supra, 494. We cannot retry the facts or pass on the credibility of the witness. Id., 495; *Vesce* v. *Lee,* 185 Conn. 328, 335, 441 A.2d 556 (1981).

Upon reviewing the entire record we can find no reason to disturb the trial court's finding that the plaintiff had substantially completed the contract with the defendant and was entitled to recover the full amount of its claim. The trial court's factual findings and ultimate conclusion are adequately supported by the record and are not clearly erroneous. Practice Book § 4061; see also *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra; *Howie's Painting Service, Inc.* v. *Ferreria,* 12 Conn. App. 583, 584, 532 A.2d 1318 (1987).

## II

The defendants next contend that the trial court erred when it determined that it was unnecesssary for the plaintiff to give the defendants the notice required by General Statutes § 49-41a (b)[5] before commencing

---

[5] General Statutes (Rev. to 1981) § 49-41a (a) and (b) provide: "ENFORCE-MENT OF PAYMENT BY GENERAL CONTRACTOR TO SUBCONTRACTOR. (a) When any public work is awarded by a contract for which a payment bond is required by section 49-41, the contract for the public work shall contain

suit on the defendants' payment bond under General Statutes § 49-42. The defendants argue that § 49-41a (b) is an integral part of the statutory scheme that furnishes a subcontractor with a cause of action against the general contractor and the surety on a payment bond under § 49-42. The defendants claim that § 49-41a (b) must be read together with, and its notice provision applied to § 49-42. Therefore, they argue that the plaintiff's failure to give them the notice that they contend was required by § 49-41a (b) is a jurisdictional defect which requires "the plaintiff's claim [under § 49-42] to fail." We disagree.

the following provisions: (1) A requirement that the general contractor, within forty-five days after payment to the contractor by the state or a municipality, pay any amounts due any subcontractor, whether for labor performed or materials furnished, when the labor or materials have been included in a requisition submitted by the contractor and paid by the state or a municipality; (2) a requirement that the general contractor shall include in each of its subcontracts a provision requiring each subcontractor to pay any amounts due any of its subcontractors, whether for labor performed or materials furnished, within twenty days after such subcontractor receives a payment from the general contractor which encompasses labor or materials furnished by such subcontractor.

"(b) If payment is not made by the general contractor or any of its subcontractors in accordance with such requirements, the subcontractor shall set forth his claim against the general contractor and the subcontractor of a subcontractor shall set forth its claim against the subcontractor through notice by registered or certified mail. Ten days after the receipt of that notice, the general contractor shall be liable to its subcontractor, and the subcontractor shall be liable to its subcontractor, for interest on the amount due and owing at the rate of one per cent per month. In addition, the general contractor, upon written demand of its subcontractor, or the subcontractor, upon written demand of its subcontractor, shall be required to place funds in the amount of the claim, plus interest of one per cent, in an interest-bearing escrow account in a bank in this state, provided the general contractor or subcontractor may refuse to place the funds in escrow on the grounds that the subcontractor has not substantially performed the work according to the terms of his or its employment. In the event that such general contractor or subcontractor refuses to place such funds in escrow, and the party making a claim against it under this section is found to have substantially performed its work in accordance with the terms of its employment in any arbitration or litigation to determine the validity of such claim, then such general contractor or subcontractor shall pay the attorney's fees of such party."

A brief summary of the applicable provisions of §§ 49-41, 49-41a (a) and (b), and 49-42 is necessary in order to place the defendants' claim in proper perspective. At all relevant times § 49-41 required that, before any contract exceeding $1000 could be awarded for the construction of a public work by the state or a municipality, the general contractor selected for the job furnish a surety bond in the amount of the contract for the protection of subcontractors supplying labor or materials in the prosecution of the work. Section 49-41a (a) required that a contract for a public work for which a payment bond was required contain a provision that the general contractor pay amounts due any subcontractor for labor or materials supplied, within forty-five days after payment to the general contractor by the state or municipality, when the labor or materials supplied by the subcontractor were included in the requisition of the general contractor paid by the state or municipality.[6]

At all relevant times, § 49-41a (b) provided that if payment was not made to a subcontractor in accordance with the requirements of § 49-41a (a), "the subcontractor *shall set forth his claim against the general contractor . . . by registered or certified mail. Ten days after the receipt of that notice* the general contractor shall be liable to its subcontractor . . . for interest on the amount due and owing at the rate of one per cent per month. In addition, the general contractor, *upon written demand* of its subcontractor . . . shall be required to place funds in the amount of the claim, plus interest of one per cent, in an interest bearing escrow account in a bank in this state . . . ." (Emphasis added.) Section 49-41a (b) also provided that the general contractor could refuse to place the funds

---

[6] Public Acts 1986, No. 86-12, § 1, amending General Statutes § 49-41a (a), changed the time limit for payment by the general contractor to the subcontractor from forty-five days to thirty days.

in escrow if the subcontractor's claim was disputed. If the subcontractor prevailed on its claim in arbitration or litigation, however, the general contractor was responsible for the attorney's fees of the subcontractor.

At all relevant times § 49-42 (a) provided that every person who had furnished labor or material in the prosecution of the work provided for in a public works contract for which a payment bond was furnished under the provisions of § 49-41, and who had not been paid in full within ninety days after last performing labor or furnishing material, had the right to sue on the payment bond for the amount unpaid at the time of the institution of suit. It further provided that a person having a contractual relationship with a subcontractor, but none with the general contractor furnishing the payment bond, had a right of action on the payment bond, upon giving written notice detailing his claim, by registered or certified mail, to the general contractor within ninety days from the day on which that person last performed the labor or furnished the material for which the claim was made. Section 49-42 contained *no* provision that such notice was a prerequisite to a cause of action by a subcontractor who had a direct contractual relationship with the general contractor who had furnished the payment bond. It is the defendants' position, however, that § 49-41a (b) required the plaintiff to give the general contractor, Colossale, the notice provided in that statute before commencing suit under § 49-42. This, they claim, fills in a gap in the statutory scheme authorizing suit against the general contractor by a subcontractor with a direct contractual relationship. We disagree.[7]

---

[7] This court has determined that General Statutes §§ 49-41 and 49-42 are patterned after and operate in general conformity with the federal statutes popularly known as the "Miller Act"; 40 U.S.C. §§ 270a through 270e; *American Masons' Supply Co.* v. *F.W. Brown Co.,* 174 Conn. 219, 223, 384 A.2d 378 (1978); *Pittsburgh Plate Glass Co.* v. *Dahm,* 159 Conn. 563, 567, 271 A.2d 55 (1970); *International Harvester Co.* v. *L. G. DeFelice & Son,*

Keeping in mind the entire statutory scheme relating to payment bonds on public works projects we conclude that, in light of their respective legislative histories and pertinent rules of statutory construction, §§ 49-41a (b) and 49-42 are not interrelated but rather, are separate and distinct statutes designed by the legislature to accomplish separate and distinct ends and to afford separate and distinct remedies to subcontractors. They are not, as claimed by the defendants, interrelated so that compliance with the notice provision of § 49-41a (b) is a jurisdictional prerequisite for a subcontractor to commence suit on a payment bond under § 49-42.

Section 49-42 has its remote genesis in chapter 118 of the Public Acts of 1917.[8] Chapter 118 was enacted

*Inc.*, 151 Conn. 325, 332–33, 197 A.2d 638 (1964). The federal courts have determined that a subcontractor who deals directly with a general contractor is not required to give any notice to the general contractor as a condition precedent to suit on a payment bond. *Roane* v. *United States Fidelity & Guaranty Co.*, 378 F.2d 40, 42–43 (10th Cir. 1967); *Continental Casualty Co.* v. *United States*, 305 F.2d 794, 797 (8th Cir.), cert. denied, 371 U.S. 922, 83 S. Ct. 290, 9 L. Ed. 2d 231 (1962); *United States* v. *E.J.T. Construction Co.*, 517 F. Sup. 1178, 1182 (E.D. Pa. 1981), aff'd, 688 F.2d 827 (3d Cir.), cert. denied, 459 U.S. 856, 103 S. Ct. 126, 74 L. Ed. 2d 109 (1982).

[8] Public Acts 1917, chapter 118, provides: "An Act concerning Contracts for the Construction of Public Building or Works.

"Any officer or agent contracting in behalf of the state or any sub-division thereof for the construction, alteration, removal or repair of any public building or of any bridge constructed under the provisions of chapter 337 of the public acts of 1915, shall require from each contractor, as a condition precedent to the execution of a contract for any such construction, alteration, removal or repair, a bond with sufficient surety, which bond shall be conditioned for the faithful excecution of the contract according to its provisions and for the payment for all materials or labor furnished in the execution of such contract. Any person, firm or corporation having any claim for materials and labor furnished in the execution of any such contract, shall file with the officers or agents contracting for any such construction, alteration, removal or repair, a statement of such claim within sixty days after he ceased to furnish such materials or labor, which claim, if correct, shall be paid by such officer or agent, who shall recover the amount thereof with costs from the surety on such bond."

in reaction to the case of *National Fireproofing Co.* v. *Huntington,* 81 Conn. 632, 71 A. 911 (1909). *Norwalk* v. *Daniele,* 143 Conn. 85, 86, 119 A.2d 732 (1955). *National Fireproofing Co.* v. *Huntington,* supra, 635, held that a mechanic's lien could not lie against the state or any of its subdivisions. To ameliorate that situation chapter 118 of the Public Acts of 1917 required a general contractor to furnish a payment bond with surety for the protection of subcontractors who provided labor or material for public works projects. Until 1941, chapter 118 and its progeny required subcontractors having an unpaid claim for labor or material furnished in the execution of a public works project to file their claims, within sixty days after they had last furnished labor or material, with the officer or agent who had contracted for the public work on behalf of the state or its subdivision. If a subcontractor's claim "was correct," it was required to be paid by such officer or agent. The officer or agent then recovered the amount paid, together with costs, from the surety on the bond.[9]

In 1941, the legislature enacted General Statutes § 695f,[10] a predecessor of § 49-42. Section 695f divested

---

[9] See Public Acts 1917, c. 118; General Statutes (1918 Rev.) § 5221; Public Acts 1925, c. 170; Public Acts 1927, c. 121; General Statutes (1930 Rev.) § 5109; General Statutes (Cum. Sup. 1933) § 1594c.

[10] General Statutes (Sup. 1941) § 695f provides: "SUIT ON BOND; WHEN AND HOW BROUGHT. (a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which a payment bond is furnished under the provisions of section 694f and who has not been paid in full therefor before the expiration of a period of sixty days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute such action to final execution and judgment for the sum or sums justly due him; provided any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing such payment bond shall have a right of action upon such payment bond upon giving written notice to such contractor within sixty days from the date on which such person per-

the contracting agent or official of the state or municipality of the responsibility for the payment of a subcontractor's claims. That enactment established the basic procedural format for suit by subcontractors on public works projects which exists until the present day. That format gives the right and the responsibility to subcontractors having unpaid claims for labor and material to bring suit themselves on the general contractor's payment bond. Section 695f and subsequent versions of the statute, including the version of § 49-42 which existed at the time this plaintiff brought suit, required that only a subcontractor who had no direct contractual relationship with the general contractor need give notice to the general contractor within a specified period after last supplying labor or material before commencing an action on the bond.[11] They contained no provision that required a subcontractor who had a direct contractual relationship with the general contractor to give the general contractor notice of the subcontractor's claim before commencing suit.[12]

formed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business or at his residence. (b) Every suit instituted under this section shall be brought in the name of the person suing, in the superior court for the county where the contract was to be performed, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the date of final settlement of such contract. (c) The word 'material' as used in sections 694f to 696f, inclusive, shall be construed to include the rental of equipment used in the prosecution of work provided for in such contract."

[11] See General Statutes (Sup. 1941) § 695f; General Statutes (1949 Rev.) § 7215; Public Acts 1961, No. 228; Public Acts 1969, No. 192, § 1; Public Acts 1978, No. 78-280, §§ 2, 127; Public Acts 1979, No. 79-602, § 100.

[12] In 1987, the legislature enacted Public Acts 1987, No. 87-345, § 2, which effected substantial changes in General Statutes § 49-42. Public Acts 1987, No. 87-345, § 2, now requires as a prerequisite to suit that every person who has furnished labor or material, who has not been paid in full within

On the other hand, the remedy afforded subcontractors by § 49-41a (b) did not exist in 1941 and was not initiated by the legislature until the 1969 legislative session, almost thirty years after the statutory framework giving a subcontractor the right to bring suit on a payment bond had been established. See Public Acts 1969, No. 427, §§ 1 and 2. Furthermore, § 49-41a (b) did not even apply to municipalities until 1976; see Public Acts 1976, No. 76-164; although §§ 49-41 and 49-42 and their predecessors had applied to municipalities since their passage in 1941. In 1969, the legislature passed Public Acts 1969, No. 427, which later became § 49-41a (b). Public Acts 1969, No. 427 required a general contractor who had failed to pay a subcontractor within forty-five days, after the general contractor had been paid by the state, to pay interest on the subcontractor's claim at the rate of 1 percent per month, commencing ten days after the receipt of notice by registered or certified mail of the subcontractor's unpaid claim.[13]

In his remarks on the floor of the Senate while introducing and urging the passage of Senate Bill No. 536, which became Public Acts 1969, No. 427, Senator John F. Pickett stated that "[t]he obvious reason for the bill

ninety days after last supplying labor or material, serve a notice of claim on the surety and the general contractor within *one hundred and eighty* days after last performing labor or supplying material.

The 1987 legislature, however, effected no changes in General Statutes § 49-41a (b). Therefore, if we were to agree with the defendants' interpretation of § 49-41a (b), there now would be two separate, and different, notice requirements for the same statute for a subcontractor having a direct contractual relation with the general contractor.

[13] Public Acts 1969, No. 427 was later amended by Public Acts 1975, No. 75-626, Public Acts 1976, No. 76-164, Public Acts 1979, No. 79-602, § 99, Public Acts 1980, No. 80-115, and Public Acts 1986, No. 86-12, § 1. Public Acts 1975, No. 75-626 expanded the statute's remedies to require the general contractor to escrow funds in the amount of the subcontractor's claim after notice, and to require the general contractor to pay a subcontractor's attorney's fees if the general contractor refused to escrow funds and the subcontractor prevailed on its claim in litigation or arbitration. Public Acts 1976, No. 76-164 extended the application of the statute to municipalities.

is, that the general contractor does not, on the last payment of the job, use the subcontractor's money to commence other jobs." 13 S. Proc., Pt. 5, 1969 Sess., p. 2168. Nowhere in Senator Pickett's remarks did he mention that the bill was related to § 49-42 or that its notice provision was, henceforth, to be a jurisdictional prerequisite for the commencement of an action on a payment bond under § 49-42. Furthermore, the subsequent legislative history of § 49-41a (b) is devoid of any indication of the existence of a relationship between § 49-41a (b) and § 49-42 or that the notice requirement of § 49-41a (b) is applicable to § 49-42.[14]

It would be incongruous for the legislature to engraft a jurisdictional notice requirement on § 49-42, a statute that had existed in substantially the same form for over a quarter of a century prior to the enactment of § 49-41a (b), without spelling out that requirement unambiguously, let alone not mentioning it at all. If § 49-41a (b) were meant to create a notice requirement for the institution of suit under § 49-42 somewhere in its original wording, in its many revisions, or in its legislative history, such an intention would probably have been expressed in some form. Lacking such an expression we cannot imply the interpretation urged by the defendants. "In the interpretation of a statute, a radical departure from an established policy cannot be implied. It must be expressed in unequivocal language." *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 667, 103 A.2d 535 (1954); *Gomeau* v. *Forrest,* 176 Conn. 523, 527, 409 A.2d 1006 (1979).

Moreover, it is clear from its plain language and its legislative history that the purpose of § 49-41a (b) is to

---

[14] See 23 H.R. Proc., Pt. 12, 1980 Sess., pp. 3647–49; 23 S. Proc., Pt. 4, 1980 Sess., pp. 1206–1207; 18 S. Proc., Pt. 6, 1975 Sess., pp. 2837–43; 13 S. Proc., Pt. 5, 1969 Sess., pp. 2167–79; see also Public Acts 1975, No. 75-626; Public Acts 1976, No. 76-164; Public Acts 1979, No. 79-602; Public Acts 1980, No. 80-115; Public Acts 1986, No. 86-12, § 1.

penalize a general contractor on a public works project, who, without cause, withholds payment from a subcontractor. The statute is obviously designed to expedite the payment of proper claims to prevent a general contractor from unjustifiably using funds rightfully belonging to subcontractors. This is accomplished by requiring the general contractor, after notice of a subcontractor's unpaid claim, to escrow funds, to pay above market interest rates and to pay the subcontractor's attorney's fees if funds are not escrowed and the subcontractor prevails. The notice provision of § 49-41a (b) sets in motion that statute's own remedial machinery. It is not, however, a statutory prerequisite to the initiation of suit by a subcontractor under § 49-42, a remedy that existed long before § 49-41a (b) came on the scene.

## III

The defendants' final claim is that the trial court incorrectly awarded the plaintiff prejudgment interest on its claim. It is the defendants' contention that compliance with the notice provision of § 49-41a (b) is a prerequisite to an award of prejudgment interest to a subcontractor on a judgment obtained as a result of a suit on a statutory payment bond under § 49-42. We disagree. For the reasons set forth in part II of this opinion we conclude that the remedies afforded subcontractors by §§ 49-41a (b) and 49-42 are independent and that the plaintiff's failure to give notice of its claims under the provisions of § 49-41a (b) did not prevent the trial court from awarding prejudgment interest at the statutory rate.

Interest "may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes due and payable." General Statutes § 37-3a. The allowance of interest as an element of damages is primarily an equitable determination and a matter within the discretion of the trial court. *Milgrim*

v. *Deluca,* 195 Conn. 191, 201, 487 A.2d 522 (1985); *Bertozzi* v. *McCarthy,* 164 Conn. 463, 467, 323 A.2d 553 (1973). The plaintiff's suit against the defendants obviously falls within the category of "civil actions" and our review of the record reveals no abuse of discretion. The trial court, therefore, did not err in awarding the plaintiff prejudgment interest.[15]

There is no error.

In this opinion the other justices concurred.

---

[15] A 1987 amendment to General Statutes § 49-42, Public Acts 1987, No. 87-345, § 2, allows prejudgment interest from the date of service of the notice of claim. The prejudgment interest allowed is at a different rate from that provided in General Statutes § 49-41a (b). Therefore, again, if we were to agree with the defendants' interpretation of § 49-41a (b) there would now be two separate and contrary interest rates applicable to § 49-42.