[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a civil action brought by Semco Manufacturing, Inc., hereafter "Semco", of Columbia, Mo., to recover payment for having provided spiral ductwork in connection with a construction project known as the Somers Special Management Facility in Somers, Connecticut.
The action is brought in Five Counts. First count is against a subcontractor, B-G Mechanical Contractors, hereafter known as "B-G", alleging unjust enrichment and breach of certain representations made to Semco. The Second Count is against the Hartford Casualty Insurance Company, hereinafter "The Hartford" on a payment bond issued to "B-G" pursuant to Section 49-41 of the Connecticut General Statutes. Count Three is against "The Hartford" on this bond but without reference to the statutory section. Count Four is against the United States Fidelity and Guaranty Company, hereafter known as "USFG" on a bond which it issued to the general contractor, Orlando Annulli a Sons, Inc., hereinafter "Annulli" pursuant to section 49-41 of the Connecticut General Statutes. Count Five is brought against USFG on this bond but without reference to the statutory provision.
The parties jointly filed with the court a "Statement of Undisputed Facts" which the court herewith adopts and repeats as follows:
"Semco fabricated and supplied spiral ductwork for the Somers Special Management Facility project. Annulli was the general contractor for the project with a contract in the amount of $26,114,034.00. USFG issued a labor and material payment bond in the amount of $26,114,034.00 naming Annulli as principal. B-G was the mechanical subcontractor on the project having a subcontract with Annulli in the amount of CT Page 4282 $3,150,000.00. The Hartford issued a subcontract labor and material payment bond in the amount of $3,150,000.00, naming B-G as principal. Concept 2000 was a subcontractor to B-G. Semco originally entered into a purchase order with Concept 2000 in the amount of $95,000.00 to supply the spiral ductwork. Concept 2000 was a subcontractor to B-G. Semco delivered materials to the job site on September 21, September 23 and September 28, 1992. The value of those materials amounted to $29,008.00, and Semco has never received payment for those shipments. The materials were incorporated into the construction project. Concept 2000 filed for bankruptcy on September 23, 1992. After Concept 2000's bankruptcy, Semco and B-G had direct communications about the materials remaining to be delivered under Semco's original purchase order with Concept 2000. These communications resulted in a new purchase order being issued by B-G to Semco on October 23, 1992 in the amount of $65,992.00 for the remaining spiral ductwork. This ductwork was subsequently shipped to the job site and incorporated into the project. B-G has paid Semco for that ductwork in the amount of $65,992.00. At all times relevant to this action, B-G was a direct subcontractor to Annulli.
There is no dispute as to the timeliness or adequacy of notice given by Semco under the respective bonds issued by The Hartford and USFG."
Section 49-41 of the Connecticut General Statutes requires that a payment bond be obtained on all public works projects exceeding $25,000.00 in amount. Although not required by statute but required by Annulli, the general contractor, B-G as the mechanical subcontractor obtained a payment bond of its own in the amount of $3,150,000.00 from The Hartford. Semco bases its case against USFG on the language of the statute itself, i.e., sections 49-41 thru 49-42
and on the holding of the Connecticut Supreme Court in American Masons' Supply Company v. F.W. Brown Company,174 Conn. 219 (1978). It bases its case against The Hartford upon the wording of The Hartford's bond maintaining that it is a "claimant". In its direct action against B-G the plaintiff has relied on the claim that the defendant has benefited from the transaction by having used the ductwork in fulfilling its contract with the general contractor and that this benefit was unjust since it was not paid for by B-G. The plaintiff has abandoned the claims in paragraph Five of the first count with CT Page 4283 reference to alleged representations made by B-G.
The action against USFG is brought under section 49-42
of the Connecticut General Statutes.
The defendants, USFG and The Hartford, base their opposition to the plaintiff's claims on the allegation that Semco is not a proper claimant under either of these bonds. These defendants divide subcontractors and suppliers into tiers and maintain that the protection of the bond extends only to subcontractors and suppliers in the first two tiers and does not extend to third tier participants. As to the unjust enrichment claim, the defendant, B-G, maintains that the unjust enrichment claim which is briefed by the plaintiff is not the unjust enrichment which was pleaded.
It is the opinion of this court that Semco is a proper claimant under the bond furnished by USFG under the provisions of section 49-41, that it has timely and appropriately brought this action against USFG under section49-42 and is entitled to full payment under the bond for the spiral ductwork that it delivered to the job site of the Somers Special Management Facility in Somers, Connecticut.
Although useful in describing the relationship of the parties to each other, the defendants and to some extent the plaintiff, have placed undue emphasis on the classification of parties as sub-subcontractors or first, second, third, etc. tier subcontractors. Plaintiff is correct in relying upon the American Masons' decision as determinative under the facts of this case but in doing so it was unnecessary to rely upon the separate contract with B-G for $65,000.00 for the balance of the ductwork. The defendant because of its designation of various tiers and its theory of remoteness has placed undue emphasis upon what it terms "two distinct chains of contractual relations."
The Connecticut Supreme Court in American Masons' does not rely upon various tiers of subcontractors nor the designations of tiers of sub-subcontractors in its analysis of that case. It refers only to subcontractors. The statute upon which the analysis of American Masons' is based, i.e., the combination of section 49-41 thru 49-42, refers only to subcontractors. It makes no artificial distinctions as to tiers or remoteness by tiers and refers only to subcontractors CT Page 4284 and subcontractors of subcontractors. The history of this combination of statutes as outlined by justice Callahan in Nor'easter Group, Inc. v. Colossale Concrete, Inc., 207 Conn. 468
makes it clear that while the remedies afforded in section49-41a and section 49-42 Connecticut General Statutes are independent of each other, these statutes were enacted to protect anyone who has furnished labor or materials for a job for which the bond provided for in section 49-41 is required whether that person be a subcontractor of the first, second or other tier. The language of section 49-42 is clear and unambiguous. It states:
 "Every person who has furnished labor or materials in the prosecution of the work provided for in such contract in respect of which a payment bond is furnished under the provisions of section 49-41 and who has not been paid in full therefor . . . may enforce his right to payment under the bond . . . . Any person having a direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing the payment bond shall have a right of action upon the payment bond . . . ."
It is uncontroverted that Semco furnished materials in the prosecution of the work provided for in the contract for the Somers Special Management Facility in Somers, Connecticut, that Annulli was the general contractor that USFG supplied a payment bond to Annulli under the terms of section 49-41 and it is uncontroverted that Semco had a direct contractual relationship with Concept 2000 although no contractual relationship, express or implied, with Annulli. It is also uncontroverted that Concept 2000 was a subcontractor of B-G under the contract for which the bond was issued. It is this latter point which has been overlooked in the analysis of this case. There is no need to rely on the independently arrived at contract between Semco and B-G. It is sufficient that Semco had a contract with Concept for material that was to be used on the project and that Concept had a contract with B-G to use that material on the project and that the material was supplied, was used on the project and not paid for. Not only is the language of section 49-42 clear as to the inclusion of those who supply materials to a subcontractor, but section49-41a(b) and (d) make it abundantly clear that a subcontractor of a subcontractor is protected regardless of what tier that CT Page 4285 person may fall into. As pointed out in American Masons' Supply, "the purpose of limiting the right of action upon the bond to only those having a direct contractual relationship with the subcontractor is to prevent the imposition of unlimited liability upon the prime contractor and his surety." Supra, p. 227. Thus, the statutory scheme would eliminate the person who supplied the metal to Semco but does not eliminate Semco since Semco had a direct relationship with the subcontractor, Concept 2000. Paraphrasing the opinion in American Masons' Supply, B-G was a subcontractor of Annulli. Allowing the plaintiff to recover for materials used by B-G under its contract with another subcontractor does not thwart the legislative intent. The essence of the protection afforded by sections 49-41 thru 49-42 is that labor or material was supplied by the person seeking recovery directly to a subcontractor for use in fulfilling the general contract regardless of what tier that subcontractor may fit into so long as he is a subcontractor of a subcontractor under the general contract.
An examination of the USFG contract reveals that despite all of the references in argument to tiers and separate contract claims, etc., the parties to the contract recognized the true intention of section 49-41, its broadness and the clarity of its intention. The pertinent language of this contract reads:
 "Any party, whether a subcontractor or otherwise, who furnishes materials or supplies or performs labor or services in the prosecution of the work under said contract, and who is not paid therefor, may bring a suit on this bond in the name of the person suing, prosecute the same to a final judgment and have execution thereon for such sum or sums as may be justly due."
As in the statute the reference is to subcontractors without reference to tiers or levels.
Despite the reference to a 1958 revision of the Connecticut General Statutes this court finds that the intention of said bond is to reflect the provisions of section49-41 of the statutes in effect at the time the bond was entered into i. e., November 8, 1991. CT Page 4286
The situation with reference to the bond furnished by The Hartford Casualty is quite a bit different from that of USFG. Although it appears from footnote #2 on p. 6 of the defendants, brief that Annulli intended that the subcontractors furnish a bond similar to that required of it under section 49-41 such a bond was not furnished. The bond provided by The Hartford defines a claimant as "one having a direct contract with the principal for labor, material or both, used or reasonably required for use in the performance of the contract, . . ." Although as indicated under the analysis of the USFG bond, Semco had a direct contractual relationship with Concept 2000, a subcontractor on the project, it cannot be said that Semco had a direct contract with B-G Mechanical Contractors, Inc. Therefore, the court must find that Semco is not an appropriate claimant under the bond both as to Counts Two and Three.
In Count One of the complaint Semco alleges unjust enrichment by B-G Construction, Inc. In paragraph Five and Six of this Count, the plaintiff alleges that B-G requested that Semco continue to furnish materials for the project and represented to Semco that it would pay Semco for all of the material supplied through Concept 2000 and in reliance upon these representations Semco continued to supply materials to B-G for use in the project. As indicated by the defendants, the plaintiff has failed to prove these points. However, despite the fact that the plaintiff has failed to prove these points and did not rely upon them in its brief, this court is of the opinion that the remaining paragraphs in Count One together with the evidence are sufficient to substantiate the claim of unjust enrichment. The plaintiff in its brief correctly recites the basis for the theory of unjust enrichment and that to recover under this theory a party must show (1) that the defendant has benefited from the transaction or has received something in value; and (2) that the benefit was unjust, that is, was not paid for by the defendant, to the detriment of the plaintiff citing Monarch Accounting Supplies, Inc. v. Prezioso, 170 Conn. 659, 665-666 (1976). The defendant in its reply brief states quite correctly that Semco has correctly identified the basic legal principles involved. The defendant while admitting that B-G Construction, Inc. received the benefit of the material supplied by Semco contests the claim of unjust enrichment on the basis that there is insufficient proof to show that Semco was not paid for the material. This court disagrees and finds that there CT Page 4287 is sufficient proof that Semco was not paid the $29,008.00 for the materials which it supplied to B-G.
Judgment may enter for the plaintiff Semco Manufacturing, Inc. against B-G Mechanical Contractors, Inc. under Count One of the complaint.
Judgment may enter for The Hartford Casualty Insurance Company on Counts Two and Three.
Judgment may enter for Semco, Inc. against USFG on both Counts Four and Count Five.
Judgment, may enter for the plaintiff against B-G and USFG on Counts One, Four and Five in the amount of $29,008.00.
The plaintiff filed in timely fashion an offer of judgment in the amount of $26,000.00 which was not accepted within thirty days after such offer was made. Since the plaintiff has recovered an amount greater than the sum certain stated in the offer of judgment it is entitled to 12% annual interest on the amount recovered computed as provided in section 52-192a of the Connecticut General Statutes.
The complaint was received in court on March 22, 1993 and the offer of judgment was received in court on May 25, 1993. Since the offer of judgment was filed within 18 months from the date the complaint was received in court, interest must run from the date that the complaint was filed with the court, i.e., March 22, 1993, a period of 396 days through April 22, 1994. $29,008.00 at 12% for 396 days equals $3,776.60. The total judgment therefore is $32,784.60. Under Section 52-192a(b) Connecticut General Statutes, plaintiff is also awarded an attorneys fee not to exceed $350.00 plus costs.
Plaintiff at the time of trial reserved his right to seek recovery of attorneys fees against USFG pursuant to the provisions of section 49-42 (a) of the Connecticut General Statutes. If the plaintiff chooses to pursue its claims for attorneys fees on this basis, the court will hear this matter during post judgment proceedings at a time to be determined by agreement of the parties and the court.
Hale, State Trial Referee. CT Page 4288