[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Joseph Seftner, filed an eleven count amended complaint dated August 7, 1996. The plaintiff claims that he is owed money for services he performed as an account manager for his former employer, the defendant, W.B. Wood Company, Inc. The defendant was engaged in selling office furniture and designing interiors.
The plaintiff alleges in the first count of his complaint that based on a "Sales Compensation Policy for Individual Account Managers," he was entitled to a sales bonus for the year 1990 in the amount of $22,638. The plaintiff alleges, however, that he was paid only $17,335. In the second count, the plaintiff claims that for the year 1991 he was owed $29,989, but was paid $12,288. In the third count, the plaintiff alleges that in addition to the sales bonuses, he was also entitled to a "New Business Bonus" for the year 1990 in the amount of $8,370, which had not been paid. The fourth, fifth and sixth counts sound in conversion and relate to the sums of money referred to in the first three counts. In the seventh, eighth and ninth counts, the plaintiff alleges that the defendant made false representations regarding the 1990 and CT Page 13719 1991 sales bonuses, and the 1990 new business bonus. In the tenth count, the plaintiff contends that the defendant breached the implied covenant of good faith and fair dealing because a new account from REMCO, which the plaintiff brought to the defendant, was arbitrarily and illegally assigned to another employee. In the eleventh and twelfth counts, the plaintiff refers to the "Headquarters Company" project and alleges that the defendant refused to pay him the commission that was due for this project, but instead converted this money to its own use.
The plaintiff seeks money damages pursuant to General Statutes § 31-72 amounting to twice the full amount of commissions due and attorney's fees.[1] The plaintiff also seeks treble damages in accordance with General Statutes §52-564.[2]
The defendant, in its answer, denies the material allegations of the complaint and pleads five special defenses. The first and second defenses claim that the statutes of limitation found in General Statutes §§ 52-596[3] and 52-577[4] bar the plaintiffs claims for renumeration. In its third and fourth special defenses, the defendant contends that the plaintiff has waived his claim for compensation and is estopped from making such claims. In the fifth special defense, the defendant alleges an accord and satisfaction.
In accordance with General Statutes § 52-434 (a) and Practice Book § 428 et seq., the case was referred to Attorney Howard C. Kaplan, an attorney trial referee, The referee conducted a trial, and thereafter submitted a report finding the following facts: (1) the plaintiff began employment with the defendant in 1989 and was terminated in 1994; (2) the plaintiff was a commission salesman whose compensation was based on a written compensation policy calling for annual bonuses based upon sales and new business; (3) the annual bonus for 1990 was due to be paid in the first several months of 1991, the annual bonus for 1991 was due to be paid in early 1992, but the plaintiff did not commence this suit until January, 1995; (4) these annual bonuses constituted periodic compensation; (5) the plaintiff entered into a written agreement with the defendant which was to be operative after his employment with the defendant terminated. According to this agreement, the plaintiff would be entitled to a commission of one-third (1/3) of the defendant's net profit in any new business that the plaintiff brought to the defendant; (6) this contract required the plaintiff to "interface" with the new CT Page 13720 client; (7) the plaintiff procured Headquarters Company as a new account for the defendant; and (8) the plaintiff did all he could to "interface" with Headquarters Company, despite opposition from the defendant.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) since the annual bonuses due the plaintiff for 1990 and 1991 were periodic payments, the two-year statute of limitations for periodic compensation, General Statutes § 52-596, barred the plaintiff from recovery for those two years; (2) the plaintiff was not entitled to recover on the basis of conversion because of the statute of limitations regarding periodic compensation. Further, the defendant's actions did not constitute a conversion, but rather a breach of contract; and (3) the claim regarding the Headquarters Company account was based on a written contract, dated June 7, 1994. According to the contract, the plaintiff was an independent contractor, and the statute governing periodic payments to employees is inapplicable.[5]
Thus, the attorney trial referee found for the defendant on counts one through six regarding bonuses for the years 1990 and 1991. The plaintiff withdrew at trial his claims regarding false representations and the breach of the covenant of good faith and fair dealing. The referee recommended that the plaintiff recover from the defendant on count eleven of the complaint a commission in the amount of $16,622 on the Headquarters project, plus interest of $1,764 to November 13, 1996, and thereafter at $4.554 per diem.[6]
Pursuant to Practice Book § 438, the defendant moved to correct the referee's report.[7] The defendant sought the addition or deletion of certain findings, which can be summarized as follows: (1) the plaintiff did not bring the Headquarters account to the defendant because the defendant had a previous relationship with this account; (2) the defendant did not prevent the plaintiff from performing his obligation to interface or liaison with Headquarters. Rather, the plaintiff refused to cooperate with the defendant with respect to the Headquarters account. Thus the plaintiff breached the contract with the defendant; and (3) the Headquarters job was not closed and fully paid because $10,000 remained uncollected, and therefore the plaintiff was not entitled to a commission.
In response to the defendant's motion to correct, the CT Page 13721 attorney trial referee declined to add anything material to his report, except the following: (1) George Russell, president of Headquarters, had purchased some furniture for his corporation from the defendant in 1986 and 1989; (2) the exact wording regarding the plaintiff's obligations with respect to the Headquarters Company account was that the plaintiff "will be interface [sic] with the customer and W. B. Wood and staff, in the usual manner;" (3) Gloria Grossman, the plaintiff's supervisor when he worked for the defendant, wrote a letter dated August 8, 1994, addressed to the plaintiff, on behalf of the defendant, regarding the Headquarters account. On August 18, 1994, the plaintiff replied to that letter;[8] and (4) three employees of the defendant, including Ms. Grossman, continued working on the Headquarters account and procured an order in December, 1994.
The defendant filed timely exceptions to the referee's report pursuant to Practice Book § 439, and also filed the required transcript of the evidence that was introduced at the trial before the attorney trial referee. The exceptions claim that the evidence shows that: (1) the defendant attempted to persuade the plaintiff to "interface" with the Headquarters Company, but was unsuccessful as illustrated by his letter of August 18, 1994; (2) the defendant did not do anything to prevent the plaintiff from carrying out his obligations under the contract of June 7, 1994; (3) the plaintiff did not carry out his obligations under said contract. Specifically, the plaintiff did not "interface" in the usual manner. Interfacing would include such activities as assisting the customer in selecting furniture, and supervising acquisition and installation of the product; (4) problems arose with the Headquarters project and the plaintiff did not play any role in attempting to resolve these problems; and (5) $10,000 of the Headquarters bill remained unpaid, and therefore the plaintiff was not entitled to a commission under any circumstances.
The defendant also filed objections to the acceptance of the referee's report, pursuant to Practice Book § 440 ("A party may file objections to the acceptance of a report on the ground that conclusions of fact stated in it were not properly reached on the basis of the subordinate facts found, or that the committee erred in rulings on evidence or other rulings or that there are other reasons why the report should not be accepted"). The objections to the report request that the court reject the referee's report because: (1) the evidence indicated that the CT Page 13722 defendant did not prevent the plaintiff from interfacing with the Headquarters account; (2) the plaintiff had alleged in his complaint that he had fulfilled his obligations under the contract of June 7, 1994, but the referee determined that the plaintiff had been prevented by the defendant from fulfilling such obligations, a claim not contained in the complaint; and (3) the referee should not have permitted the plaintiff to testify in rebuttal about his problems with the defendant and the Headquarters account. Rather, this testimony should have been presented in the plaintiff's case in chief.
A trial court's scope of review of an attorney trial referee's report regarding the facts of a given case, is discussed in Elgar v. Elgar, 238 Conn. 839,679 A.2d 937 (1996): "A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) Id., 848-49.
According to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence." Id. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id.
A review of the transcript indicates that the referee's findings of fact have support in the record.[9] There was, in other words, sufficient testimony for the referee's factual conclusions that the plaintiff continued to interface with the Headquarters Company to the extent possible in view of the attempt by the defendant to prevent him from doing so.
In addition to insuring that the factual findings are CT Page 13723 supported by the evidence introduced at trial, the court, in reviewing an attorney trial referee's report, must also determine whether "the conclusions reached were in accordance with the applicable law." Thermoglaze, Inc. v. Morningside Gardens,Inc., 23 Conn. App. 741, 746, 583 A.2d 1331, cert. denied,217 Conn. 811, 587 A.2d 153 (1991); see also Bernard v.Gershmann, 18 Conn. App. 652, 656, 559 A.2d 829 (1989). The objections filed in this case essentially relate to the conclusion by the referee that the plaintiff was entitled to a commission on the Headquarters account because he had complied as best he could with the provisions of the June 7, 1994 agreement. This contract obligated the plaintiff to interface with any new account such as Headquarters in the usual manner. The referee found as a fact that the plaintiff fulfilled his obligations under the contract to the extent that he could do so, but was prevented by the defendant from fully participating in the Headquarters project. An example of the defendant's interference is the refusal to respond to a number of the plaintiff's telephone calls inquiring about the account.
The defendant's objections to certain facts contained in the referee's report is brought pursuant to Practice Book § 440. "Section 440, however, cannot be used to attack findings of fact." Iroquois Gas Transmission System v. Mileski,43 Conn. App. 47, 51, 682 A.2d 140 (1996). The defendant also seeks to substitute its version of the facts for the referee's finding that the defendant had hampered and blocked the plaintiff from actively participating in the Headquarters account. This request by the defendant would require the court to retry the case and reexamine the credibility of the witnesses. This is not permitted. Argentinis v. Gould, 23 Conn. App. 9, 19,579 A.2d 1078, rev'd on other grounds, 219 Conn. 151,592 A.2d 375 (1991). There was testimony by witnesses for the defendant to the effect that nothing was done to prevent the plaintiff from interfacing with the Headquarters account. The referee, however, chose to believe contrary testimony presented by the plaintiff. "In making this explicit factual determination, the attorney trial referee implicitly found certain witnesses to be credible and believable in their testimony. This was precisely his function as a fact finder. The resolution of conflicting factual claims falls within the province of the trial court."Nor'easter Group. Inc. v. Colossale Concrete. Inc.,207 Conn. 468, 473, 542 A.2d 692 (1988).
The defendant has made a major issue in its exceptions and CT Page 13724 objections that the plaintiff testified about his relations with the Headquarters account only on rebuttal and not on his direct case. The referee explained that he overruled the defendant's objection to this testimony because, before the plaintiff's testimony had been completed, Ms. Grossman testified that the plaintiff had not interfaced with the Headquarters account.[10]
The referee believed that it was proper to permit the plaintiff to rebut testimony by the defendant's employee, and this decision clearly is discretionary. "The order in which evidence is received is within the discretion of the trial court."Steiner v. Bran Park Associates, 216 Conn. 419, 430,582 A.2d 173 (1990).
Based on the above cited cases, it would not be proper for the court in this breach of contract case to reject the referee's report regarding the liability of the defendant and the amount of damages sustained by the plaintiff. A trial court "cannot find additional facts or reject others unless a material fact has been found without evidence." Das v. Rodgers,47 Conn. App. 242, 251, ___ A.2d ___ (1997). An example of the application of this axiom is the request of the defendant that the court substitute a finding that the defendant had not been fully paid for the Headquarters job. The referee found that payment was complete and there was testimony to that effect from Mr. Russell, the principal officer of Headquarters, on which the referee was entitled to rely.[11]
The referee's conclusion that the plaintiff is entitled to a commission on the Headquarters Company account is legally and logically consistent with the facts found by the referee.Romano v. Derby, 42 Conn. App. 624, 628, 681 A.2d 387
(1996). No material error in the referee's report has been found, and there is no other sufficient reason for rendering the report unacceptable. Practice Book § 443. Hence, judgment is entered in favor of the plaintiff against the defendant in the amount of $16,622, with prejudgment interest for money wrongfully withheld[12] to November 13, 1996, in the amount of $1,764. Thereafter a per diem amount of $4.554, to the date of this judgment, for a total recovery of $19,242. This amount includes interest of $2,620. Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 4th day of December, 1997. CT Page 13725
William B. Lewis, Judge