[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought in two Counts. The first Count alleges a breach of contract by the J.S. Nasin Company (hereinafter Nasin) as principal. The plaintiff alleges Nasin has not paid for work and materials furnished under the contract. It CT Page 14485 seeks recovery against Nasin and/or The Aetna Casualty and Surety Company (now Travelers-Aetna) as surety for Nasin pursuant to § 49-41, et seq. of the Connecticut General statutes.
The second Count seeks recovery for work and materials performed under a theory of quantum meruit.
The defendants deny owing the amount sought and by Special Defense allege that:
 1. Nasin has not been paid by the customer and the plaintiff (hereinafter Liberty Glass) is entitled to be paid only when Nasin is paid for its work.
 2. Work done under a work order change was not approved by the owner and architect. (This Special Defense was not pursued)
 3. The plaintiff's action is premature in that it relates to contract retainages being held by the owner and an unapproved change order.
4. The plaintiff's work is incomplete.
The defendant has also filed a counterclaim seeking damages because of the alleged premature bringing of the suit.
 Factual Background
In September 1993, Nasin and the town of Columbia entered into a contract for the alteration and repair of the Horace W. Porter School in that town. Pursuant to General Statutes § 49-41, a bond in the amount of $8,492,000 was furnished by Travelers-Aetna to protect entities supplying material and labor under the contract.
In December 1993, Liberty Glass contracted with Nasin to provide work and material on the project, primarily the installation of doors and windows. The original contract price between Nasin and Liberty Glass was $345000. The parties stipulated that with change orders the contract price increased to $349,344.77; that payments of $333,678 were made leaving an unpaid balance of $15,666.77. It is this amount which is in dispute. CT Page 14486
Additional factual findings will be discussed as relevant to the issues between the parties.
 Substantial Performance of the Contract
Liberty Glass commenced work at the school in 1994. The doors in question were installed sometime in 1995 and the work was substantially completed by approximately September, 1995. Some corrective work had to be done and in March 1996, Nasin wrote to Liberty Glass referring to the completion of a punch list and asking for warranties to be supplied (effective August 28, 1995) as required by the contract. (Def. Ex 1).
The contract called for specific but differing warranty periods ranging from one year to ten years (Plaintiff's Ex. E). It further required these guarantees to be honored by the subcontractor Liberty Glass in the event the manufacturer's guarantee was for a shorter period than specified. (Exhibits A, E and 1).
There were also some window screens missing-approximately 8 screens out of between 200 to 300 windows which were installed.
The issues of the warranties and the screens were, at first, the only significant issues, but sometime in 1997, some of the metal exterior doors discolored. The manufacturer was notified and a company representative came to inspect them. The company representative suggested three options to correct the problems, to wit: 1. try to polish out the discoloration, 2. replace the discolored portions of the doors by cutting them off and welding a new piece on, or 3. install kick plates or panels over the discolored parts of the door. (All of the discolorations appeared on the bottom panel of the doors in question.) There are approximately 21 doors that discolored.
Liberty Glass determined that the third option, installing kick panels over the bottom panels of the discolored doors, was the best way to remedy the defect. It believed the kick panels would not only cover any discoloration but would actually be an enhancement in that the doors would actually be strengthened by the installation of the 1/8" thick plates which were the same color as the doors. Nasin's project manager thought Liberty Glass's proposal was acceptable, but Nasin required approval by the architect for the remedial work. On December 11, 1997 Nasin wrote to the architect asking for approval (or rejection) of the CT Page 14487 Liberty Glass proposal. (Ex. I).
When no response was forthcoming from the architect, Liberty Glass, wanting to complete the project, installed the kick panels on the discolored doors on or about April 13, 1998. The missing window screens were delivered on or about January 28, 1998, and on November 1, 1997, Liberty Glass submitted what it considered to be the warranties as required by the contract.
On May 21, 1998, Nasin wrote to the architect that Liberty Glass had completed the punch list, verified by the project manager, and asking the architect to release the final payment due under the contract to Liberty Glass. (Ex. J). Payment was never authorized.
The senior vice-president of the architectural firm testified that he asked, but was never told, why the door discolored. (There was evidence that the metallurgical testing required for such an analysis would be cost prohibitive). The architect also testified that he inspected the doors just prior to testifying in this case in December 1998 and no discoloration was seen by him outside of the covering panels. His testimony was contradicted by the vice-chair of the school building committee who said she noted some discoloration above the kick panels. She also testified the building committee relies on the architect's approval before disbursing funds. The Court concludes the architect's training and experience lend credibility to his testimony that there is no noticeable spread of discoloration.
The concern expressed by both Nasin and the architect that if the discoloration spreads, Nasin, as the general contractor, could be liable for any further remedial action including replacement if necessary is not determinative. Liberty Glass has provided Nasin with its own warranty and would be responsible for any defects during the warranty period.
In short, the Court finds that Liberty Glass has substantially completed its work under the contract.
 Is the Plaintiff required to wait for Payment until the general contractor has been paid?
The town of Columbia and Nasin are presently in arbitration over multiple contract issues, including the contract in issue in this case. CT Page 14488
This action is brought pursuant to General Statutes § 49-41 et seq. and payment is sought under the bond of Travelers-Aetna. Nasin is obligated to pay its sub-contractors even if the town does not pay Nasin, as long as the work is done by the sub-contractor. See Chapman v. EI Constructors, No. CV 40938, Superior Court, Litchfield JD 2/21/95 (Walsh, J.) andNor'Easter Group Inc. v. Colossale Concrete. Inc.,207 Conn. 468 (1988).
It is generally accepted that § 49-41 is a remedial statute meant to give security to suppliers in public works projects.
The Court concludes the plaintiff is entitled to be paid under the performance bond and its action is not premature.
 Interest and Attorney's fees
Liberty Glass seeks an award of interest and attorney's fees. General Statutes § 49-42(a) provides the Court "may award reasonable attorney's fees . . . if upon reviewing the entire record, it appears that either the original claim, the surety's denial of liability, or the defense interposed to the claim is without substantial basis in fact or law." Exercising its discretion the Court declines to award attorney's fees or interest.
This action commenced in May 1997. The remedial kick panels were installed in April 1998. The window screens were delivered in January 1998 and the final warranties in November 1997. Thus, when the suit was brought the punch list items remained undone.
While entering judgment for the plaintiff, the Court does not conclude that, based on the entire record, the defense were without substantial legal or factual basis. There were legitimate issues as to substantial completion raised by the defendant.
Accordingly, judgment shall enter for the plaintiff in the amount of $15,666.77 plus costs.
Judgment for the plaintiff on the counterclaim.
Klaczak, J. CT Page 14489