Penstan Supply, Inc., Appellant *v.* The Pennsylvania State University, Appellee.

Argued May 7, 1979, before Judges DiSalle and MacPhail, sitting as a panel of two.

*Joseph E. Schmitt*, with him *Stonecipher, Cunningham, Beard & Schmitt*, for appellant.

*Charles C. Brown, Jr.*, with him *McQuaide, Blasko & Brown, Inc.*, for appellee.

OPINION BY JUDGE DiSALLE, July 19, 1979:

Penstan Supply, Inc. (Appellant), appeals the decision of the Court of Common Pleas of Allegheny County which sustained the preliminary objections of The Pennsylvania State University (Penn State) to Appellant's complaint in trespass. We affirm.

Penn State entered into a contract with B. J. Tamasy & Sons, Inc., the prime contractor, for a job at its University Park campus. Appellant supplied materials to the prime contractor but has not been paid for these goods. The prime contractor has since filed for bankruptcy. The controversy presented by the instant appeal stems from the fact that the prime contractor failed to provide a payment bond as required by Section 3(a)(2) of the Public Works Contractors' Bond Law of 1967 (Bond Law).[1] Appellant

---

[1] Act of December 20, 1967, P.L. 869, 8 P.S. §193(a)(2).

contends that Penn State was duty bound to require the payment bond before awarding the contract and that its failure to do so in this case rendered it negligent per se. The lower court determined, however, that it was not the purpose of the statute to impose liability on a contracting body for default by the prime contractor.

Section 3(a)(2) pertinently provides that:

> (a)  Before any contract exceeding five thousand dollars ($5,000) for the construction, reconstruction, alteration or repair of any public building or other public work or public improvement, including highway work, of any contracting body is awarded to any prime contractor, *such contractor shall furnish to the contracting body the following bonds,* which shall become binding upon the awarding of said contract to such contractor:
>
> . . . .
>
> (2)  A payment bond. . . . (Emphasis supplied.)

A reading of this statutory language reveals that the burden of providing this bond falls clearly on the prime contractor. Furthermore, we cannot conclude, as Appellant would have us do, that the legislature intended the contracting body to assume responsibility to a subcontractor for the prime contractor's omission in this regard.

Judge PAPADAKOS of the court below ably discussed the legislative intent in requiring a payment bond of a prime contractor as follows:

> Surely, it was not to protect the public body from suits in assumpsit or from the filing of mechanics' liens since an owner, whether a public body or not, is not personally responsible for the payment of labor and material claims incurred by the principal obligor, the prime con-

tractor—at least not by any contractural [sic] arrangement between them. Nor can laborers and materialmen acquire a lien on public buildings. (See Mechanics' Lien Law of 1963, 49 P.S. 1303(b).)

Failing these explanations, our Legislature may have required a payment bond as an act of benevolence toward laborers and materialmen, who are characteristically not well placed to shoulder the risk of the prime contractor's insolvency. Although the Legislature has created a substitute for the more customary protection afforded by the Mechanics' Lien Law in other than public works projects, we do not see that the Legislature intended an inferential right of action to be created against the public body when a direct cause of action does not exist. Had the Legislature intended such a result, or had it intended to penalize a public body for failing to follow the mandates of the Bond Law with respect to performance and payment bonds, it would have done so.

Accordingly, we affirm.

### Order

And Now, this 19th day of July, 1979, the order of the Court of Common Pleas of Allegheny County, dated July 15, 1978, is hereby affirmed.