O AND G INDUSTRIES, INC. *v.* TOWN OF NEW MILFORD
(14690)

PETERS, C. J., BORDEN, NORCOTT, KATZ and PALMER, Js.

Argued December 7, 1993—decision released March 25, 1994*

*Robert L. Trowbridge,* with whom was *Christopher Cobb,* for the appellant (plaintiff).

*George C. Hastings,* with whom was *Linda L. Morkan,* for the appellee (defendant).

*Lloyd L. Langhammer* filed a brief for the Connecticut Associated Builders and Contractors, Inc., et al., as amici curiae.

PALMER, J. The sole issue presented by this certified appeal is whether, under General Statutes § 49-41,[1]

---

* March 25, 1994, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 49-41 provides in relevant part: "PUBLIC STRUCTURES. BONDS FOR PROTECTION OF EMPLOYEES AND MATERIALMEN. (a) Before any contract exceeding twenty-five thousand dollars in amount for the construction, alteration or repair of any public building or public work of the state or of any subdivision thereof is awarded to any person, except a design professional, as defined in section 4b-55, that person shall furnish to the state or the subdivision a bond in the amount of the contract which shall be binding upon the award of the contract to that person, with

a municipality owes a duty to a subcontractor or material supplier to obtain a payment bond from the general contractor. The plaintiff subcontractor, O and G Industries, Inc., brought an action against the defendant, the town of New Milford, claiming that the defendant's failure to secure a payment bond from the general contractor hired to perform a municipal paving project rendered the defendant liable for damages resulting from the general contractor's failure to pay the plaintiff for materials supplied. Both parties moved for summary judgment, and the trial court granted the plaintiff's motion and rendered judgment for the plaintiff in the amount of $93,334.95. On appeal, the Appellate Court reversed the judgment and remanded the case to the trial court with direction to render judgment for the defendant, holding that the defendant owed no statutory duty to the plaintiff to secure a payment bond from the general contractor.[2] We granted the plaintiff's petition for certification,[3] and affirm the judgment of the Appellate Court.

The material facts are not in dispute. On May 1, 1990, the defendant awarded a contract to Austin Driveway Services, Inc. (general contractor), to perform paving work on certain public roads and parking lots in New Milford. The general contractor hired the plaintiff to supply asphalt and other road construction materials for the project, and the plaintiff did so in a timely man-

---

a surety or sureties satisfactory to the officer awarding the contract, for the protection of persons supplying labor or materials in the prosecution of the work provided for in the contract for the use of each such person . . . ."

[2] *O & G Industries, Inc.* v. *New Milford,* 29 Conn. App. 783, 617 A.2d 938 (1992).

[3] We granted the plaintiff's petition for certification to appeal limited to the following issue: "Under General Statutes § 49-41, does a municipality owe a duty to a subcontractor or material supplier to obtain a payment bond from the general contractor?" *O & G Industries, Inc.* v. *New Milford,* 225 Conn. 905, 621 A.2d 286 (1993).

ner. Upon substantial performance of the contract by the general contractor, the defendant paid the general contractor in full. Shortly thereafter, however, the general contractor filed for bankruptcy without having paid for the materials supplied by the plaintiff. The general contractor had failed to post a payment bond as required by § 49-41.

The plaintiff contends that the defendant was obligated to ensure that a payment bond had been posted because § 49-41 directs that the general contractor shall furnish a bond "[b]efore any contract . . . is awarded . . . ." We do not agree with the statutory construction urged by the plaintiff. Section 49-41 provides in relevant part that "[b]efore any contract . . . for the construction, alteration or repair of any public building or public work of the state or of any subdivision thereof is awarded to any person . . . that person shall furnish to the state or the subdivision a bond in the amount of the contract . . . for the protection of persons supplying labor or materials in the prosecution of the work provided for in the contract . . . ." In determining whether the legislature, in enacting § 49-41, intended to impose a duty on a state or municipality to secure a payment bond from the general contractor for the benefit of a subcontractor, "we are guided by the well established principles of statutory construction which require us to ascertain and give effect to the apparent intent of the legislature. . . . When the language of the statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." (Citations omitted.) *State* v. *White,* 204 Conn. 410, 421, 528 A.2d 811 (1987); see also *Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 186–87, 592 A.2d 912 (1991); *Winslow* v. *Lewis-Shepard, Inc.,* 216 Conn. 533, 537–38, 582 A.2d 1174 (1990). Section 49-41 is clear and unambiguous:

the general contractor is solely responsible for furnishing the payment bond. The statutory language relied upon by the plaintiff, namely, that the general contractor shall furnish the payment bond "[b]efore any contract . . . is awarded," merely sets forth the time frame within which the general contractor is required to post the bond, and imposes no obligation upon the state or local agency to ensure that the general contractor does so.[4]

Moreover, our conclusion that the defendant owed no duty to the plaintiff to require the general contractor to post a payment bond is fully supported by the legislative history of § 49-41. The original predecessor of § 49-41, chapter 118 of the Public Acts of 1917,[5] was enacted in response to our decision in *National Fireproofing Co.* v. *Huntington,* 81 Conn. 632, 71 A. 911 (1909), wherein we held that sovereign immunity prohibited the filing of a mechanic's lien against the state or any of its subdivisions. See *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.,* 207 Conn. 468, 477–78, 542

[4] We have held that a construction contract is voidable if the general contractor fails to furnish a payment bond as required by General Statutes § 49-41. *Norwalk* v. *Daniele,* 143 Conn. 85, 89, 119 A.2d 732 (1955). Neither party, however, has claimed that the contract was invalid in this case.

[5] Chapter 118 of the Public Acts of 1917 provided: "Any officer or agent contracting in behalf of the state or any sub-division thereof for the construction, alteration, removal or repair of any public building or any bridge constructed under the provisions of chapter 337 of the public acts of 1915, shall require from each contractor, as a condition precedent to the execution of a contract for any such construction, alteration, removal or repair, a bond with sufficient surety, which bond shall be conditioned for the faithful execution of the contract according to its provisions and for the payment for all materials and labor used or employed in the execution of such contract. Any person, firm or corporation having any claim for materials or labor furnished in the execution of any such contract, shall file with the officers or agents contracting for any such construction, alteration, removal or repair, a statement of such claim within sixty days after he ceased to furnish such materials or labor, which claim, if correct, shall be paid by such officer or agent, who shall recover the amount thereof with costs from the surety on such bond."

A.2d 692 (1988). Chapter 118 remedied the harsh consequences of that decision by requiring the state or municipal contracting officer to secure a surety bond from each contractor for the protection of any subcontractor providing labor or materials to the project.

In 1941, the legislature enacted General Statutes § 694f,[6] which eliminated the requirement that the contracting officer obtain a payment bond from the general contractor, and substituted the provision that the general contractor "shall furnish . . . a bond . . . for the protection of persons supplying labor or materials" under the contract. It is apparent that, in enacting § 694f and, subsequently, § 49-41, which is in all material respects identical to § 694f,[7] the legislature intended to relieve the state or municipality from any obligation to a subcontractor to ensure the posting of a bond.[8]

---

[6] General Statutes (Sup. 1941) § 694f provided in relevant part: "Before any contract exceeding one thousand dollars in amount for the construction, alteration or repair of any public building or public work of the state or of any subdivision thereof is awarded to any person, such person shall furnish to the state or such subdivision a bond in the amount of the contract which shall be binding upon the award of the contract to such person, with a surety or sureties satisfactory to the officer awarding the contract, for the protection of persons supplying labor or materials in the prosecution of the work provided for in such contract for the use of each such person."

[7] General Statutes § 49-41 differs from General Statutes (Sup. 1941) § 694f in only two respects: (1) § 49-41 applies to state or municipal contracts exceeding $25,000, whereas § 694f concerned public contracts in excess of $1000; and (2) design professionals are exempt from the requirements of § 49-41, while no category of general contractor was exempt under § 694f. Neither of these distinctions bears upon the issue in this case.

[8] We also note that prior to 1941, the state or municipal contracting agent was responsible for the administration of any claims filed by a subcontractor on the bond. See Public Acts 1917, c. 118; General Statutes (Sup. 1933) § 1594c. In 1941, however, the legislature "divested the contracting agent or official of the state or municipality of the responsibility for the payment of a subcontractor's claims"; *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.,* supra, 207 Conn. 478–79; and, instead, placed the responsibility with the subcontractor to initiate an action on the bond. General Statutes (Sup.

Moreover, because § 49-41 is "patterned after and operate[s] in general conformity with the federal statutes popularly known as the 'Miller Act'; 40 U.S.C. §§ 270a through 270e";[9] *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.,* supra, 207 Conn. 476 n.7; *Baldwin-Lima-Hamilton Corp.* v. *Aetna Casualty & Surety Co.,* 163 Conn. 331, 335, 307 A.2d 1109 (1972), cert. denied, 409 U.S. 169, 93 S. Ct. 910, 34 L. Ed. 2d 689 (1973) (intent of legislature in enacting § 49-41 same as that of Congress in enacting Miller Act); we look to federal judicial interpretations of the Miller Act for guidance. *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.,* supra, 476–77 n.7. Federal courts interpreting the Miller Act have concluded that the United States owes no duty to a subcontractor to ensure that the general contractor has furnished a payment bond, and, therefore, that the government is not liable in damages to a subcontractor for its failure to do so. See, e.g., *Hardaway Co.* v. *United States Army Corps of Engineers,* 980 F.2d 1415, 1416–17 (11th Cir. 1993); *Westbay Steel, Inc.* v. *United States,* 970 F.2d 648, 650 (9th Cir. 1992); *Arvanis* v. *Noslo Engineering Consultants, Inc.,* 739 F.2d 1287, 1290 (7th Cir. 1984).

---

1941) § 695f. General Statutes § 49-42, a successor to § 695f, retains the provision whereby the subcontractor, rather than the state or municipal contracting authority, bears the responsibility for obtaining payment on the bond. This modification of the procedure in order to make a claim on the bond is further evidence of the legislative intent to relieve the public contracting authority of any obligation to a subcontractor with respect to the payment bond.

[9] Section 270a (a) of title 40 of the United States Code provides in relevant part: "Before any contract, exceeding $25,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person . . .

"(1) A performance bond with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall deem adequate, for the protection of the United States."

A number of states have passed legislation similar to the Miller Act, and while the cases construing those statutes have turned on the language and legislative history of the particular statutory provisions at issue, there is substantial state judicial authority in accord with our determination that a state or municipality has no affirmative obligation to a subcontractor to require the posting of a payment bond.[10] The decision of the Michigan Court of Appeals in *Barnes & Sweeney Enterprises, Inc.* v. *Hazel Park,* 169 Mich. App. 422, 425 N.W.2d 572 (1988), is particularly persuasive because that case involved the interpretation of a statute nearly identical in both language and history to our own. The statute at issue in that case provided that "[b]efore any contract . . . is awarded . . . the [general contractor] shall furnish at his or her own cost to the governmental unit a performance bond and a payment bond . . . ." Id., 425. The Michigan Court of Appeals held that the statute did not impose a duty on the public agency to ensure the posting of those bonds. In so holding, the court noted that a predecessor statute had required the government agency to obtain a payment bond from the general contractor, and that the elimination of that language from the amended statute reflected the intent of the legislature to relieve the public contracting authority of any obligation to a subcontractor to ensure the posting of the bonds. Id., 425–26. We reach the same conclusion on the basis of the similarly unambiguous language and legislative history of § 49-41.

---

[10] See, e.g., *Barnes & Sweeney Enterprises, Inc.* v. *Hazel Park,* 169 Mich. App. 422, 425 N.W.2d 572 (1988) (no government liability); *Penstan Supply, Inc.* v. *Pennsylvania State University,* 44 Pa. Commw. 347, 403 A.2d 1054 (1979) (no government liability); *Heldenfels Bros., Inc.* v. *Corpus Christi,* 832 S.W.2d 39 (Tex. 1992) (no government liability); but see *Medical Clinic Board* v. *Smelley,* 408 So. 2d 1203 (Ala. 1981) (government liable); *Cowin & Co.* v. *Merrill,* 202 Wis. 614, 233 N.W. 561 (1930) (government liable).

The plaintiff relies primarily on *Royal School Laboratories, Inc.* v. *Watertown,* 236 F. Sup. 950 (D. Conn. 1965) (*Royal School I*), rev'd on other grounds, 358 F.2d 813 (2d Cir. 1966) (*Royal School II*), as authority for the proposition that the defendant owed a duty to the plaintiff, under § 49-41, to secure a payment bond from the general contractor. In *Royal School I,* a subcontractor brought an action against the town of Watertown for failure to ensure the posting of the payment bond required by § 49-41. The District Court acknowledged that the issue was one of first impression in Connecticut, and conceded that a majority of courts had held that a municipality is not liable to a subcontractor for failure to obtain a statutorily required payment bond. *Royal School I,* supra, 953. The court held, nonetheless, that the town was liable to the subcontractor for a breach of duty under § 49-41, concluding that Connecticut probably would adopt the minority view. Id., 954–55. On appeal, the Court of Appeals for the Second Circuit reversed the judgment of the District Court, but did so without deciding the issue of the town's liability to the subcontractor under § 49-41.[11] The Court of Appeals expressly noted, however, that it had "no confidence" that Connecticut would adopt the minority view. *Royal School II,* supra, 816. We now decline to do so.

As we have discussed, the legislature, in enacting § 49-41, did not intend to impose upon the state or its subdivisions the duty to obtain a payment bond for the protection of subcontractors. Under the statute, it is the obligation of the general contractor to furnish the bond and the responsibility of the subcontractor to assure itself that the bond has been posted. Because the defendant owed no legal duty to the plaintiff to

[11] The Court of Appeals held that the District Court had improperly denied the town's petition for interpleader, and remanded the case to the District Court for further proceedings. *Royal School II,* supra, 358 F.2d 815–17.

obtain the payment bond required by § 49-41, the Appellate Court properly concluded that the defendant was entitled to summary judgment.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.