[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT
I
 Introduction and Factual Background
On June 9, 1989, The Lane Construction Corporation (hereinafter, "Lane") contracted with the State of Connecticut to construct the North Central Connecticut Correction Facility in Suffield, Connecticut. On August 25, 1989, as required by General Statutes § 49-41, Lane executed a $3,692,000 labor and material bond with Seaboard Surety Co. (hereinafter, "Seaboard"). On September 25, 1989, Lane entered into an agreement with Premium Materials, Inc. (hereinafter, "Premium"), whereby Premium agreed to supply gravel and sand fill for the North Central Facility.
In December, 1989, Premium entered into a contract with the plaintiff, Trevex, Inc. (hereinafter, "Trevex"), whereby Trevex agreed to transport gravel and sand fill from Enfield, Connecticut to the North Central Facility. Similarly, Premium entered into a contract with the plaintiff Transporter Trucking, Inc. (hereinafter, "Transporter"), in which Transporter agreed to haul loads of material to the North Central Facility.
The plaintiffs, Transporter and Trevex, have filed similar two-count complaints against the defendants, Lane, Premium, and Seaboard. In Count One, directed at Lane and Premium, the plaintiffs seek contract damages for failure to pay for the trucking services. In Count Two, directed at Seaboard, the plaintiffs seek to recover under the bonding CT Page 12482-G provisions of General Statutes § 49-42 maintaining that the trucking and hauling services were provided pursuant to a contract for which a payment bond was furnished under the statute.
On October 21, 1994, Lane and Seaboard filed a motion to consolidate the present cases for the purpose of determining liability and on November 7, 1994, the court, Spada, J., granted the motions.
On December 7, 1994, Lane and Seaboard filed identical motions for summary judgment with respect to the complaints. Lane moves for summary judgment with respect to Count One on the ground that Lane is not a party to, or guarantor of, Transporter's and Trevex's contract with Premium and on the further ground that Lane does not owe Transporter and Trevex an equitable obligation. Seaboard moves for summary judgment with respect to Count Two on the ground that Transporter and Trevex have no standing under General Statutes § 49-42 to bring a claim against the payment bond provided by Seaboard.
 II DISCUSSION
 A.
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829
(1989). "In a summary judgment motion, the parties are entitled to consideration, not only of the facts presented by their [documents], but of the `inferences which could be reasonably and logically drawn from them' as well." DeDomincis v. American National Fire Ins. Co., 2 Conn. App. 686,687, 483 A.2d 616 (1984). "`However, since litigants ordinarily have a constitutional right to have issues of fact decided by a jury . . . the moving party for summary judgment is held to a strict standard . . .' of demonstrating his entitlement to summary judgment." (Citation omitted.)Kakadelis v. DeFabritis, 191 Conn. 276, 282, 464 A.2d 57
(1983). Moreover, "`the trial court must view the evidence in the light most favorable to the nonmoving party.'" Suarez v.CT Page 12482-HDickmont Plastics Corp. 229 Conn. 99, 105, 639 A.2d 507
(1994).
"`The test [for the grant of a motion for summary judgment] is whether a party would be entitled to a directed verdict on the same facts.'" Id., 105-06. "A directed verdict is appropriate when the jury could not have reasonably and legally have reached any other conclusion." (Internal quotation marks omitted.) Boehm v. Kish, 201 Conn. 385, 393
n. 4, 517 A.2d 624 (1986).
 B. 1.
To recover under a contract theory, Transporter and Trevex must be in privity of contract with Lane. Coburn v.Lenox Homes, Inc., 173 Conn. 567, 570, 378 A.2d 599 (1977). In the present case, Lane entered into an agreement with Premium to supply gravel and sand fill. Premium then contracted with Transporter and Trevex to transport and haul the gravel and sand fill. There was no direct contract with Lane and thus Transporter and Trevex were not in privity with Lane. As such, Transporter and Trevex cannot recover against Lane under a contract theory. Zapata v. Burns, 207 Conn. 496,516, 542 A.2d 700 (1988).
2.
Similarly, the plaintiffs cannot recover under the doctrine of unjust enrichment. "The doctrine of unjust enrichment `is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another . . . The question is: Did he, to the detriment of someone else, obtain something of value to which he was not entitled?'" Monarch Accounting Supplies Inc. v. Prezioso,170 Conn. 659, 665, 368 A.2d 6 (1976). Pursuant to the purchase order agreement between Lane and Premium, Lane fulfilled its obligation by paying Premium $70,409.32 in 1989 and $629,588.37 in 1990. As Lane fulfilled its obligations to Premium, Lane did not obtain something of value to the detriment of Transporter and Trevex and thus Lane was not unjustly enriched. Lane's motions for summary judgment with respect to Count One of Transporter's and Trevex's substituted complaints are accordingly granted. CT Page 12482-I
 C. 1.
General Statutes § 49-42(a) provides in relevent part that "[a]ny person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing the payment bond shall have a right of action upon the payment bond giving written notice of claim as provided in this section." Our Supreme Court has "concluded that the General Assembly intended General Statutes §§ 49-41 and 49-42 to operate in conformity with the federal statute, popularly known as the Miller Act (40 U.S.C. § 270a-270e)." American Masons' Supply Co. v. F.W. Brown Co., 174 Conn. 219, 223, 384 A.2d 378 (1978). Therefore, Connecticut courts should look to federal cases in interpreting the Miller Act. O G Industries, Inc. v. NewMilford, 229 Conn. 303, 309, 640 A.2d 110 (1994). In J.W.Bateson Co. v. United States ex rel. Board of Trustees,434 U.S. 586, 594 (1978), the Supreme Court ruled that to recover against the payment bond, the plaintiff must have a contractual relationship with either the contractor or the subcontractor. As previously discussed, the plaintiffs were not in privity with and did not have a contractual relationship with Lane. Rather, Lane entered into an agreement with Premium, and Premium entered into agreements with the plaintiffs. Thus, in order to recover, the plaintiffs must demonstrate that Premium was a subcontractor for Lane.
In determining whether Premium was a subcontractor, the court must focus on its duties: was it a mere supplier of materials to the prime contractor or an actual subcontractor? Both parties agree that if Premium was a supplier of materials, i.e., a materialman, and not a subcontractor, under federal law it may not recover under the bond. See, CliffordMacEvoy Co. v. United States ex. rel. Tompkins, 322 U.S. 102,108-110 (1944).
Whether a party is a subcontractor or a materialman is based on a functional, rather than a technical, definition.F. D. Rich Co. v. Industrial Lumber Co., 417 U.S. 116, 122-123 (1974). The rationale for the distinction is that "[t]he relatively few subcontractors who perform part of the original CT Page 12482-J contract represent in a sense the prime contractor and are well known to him. It is easy for the prime contractor to secure himself against loss by requiring the subcontractors to give security by bond, or otherwise, for the payment of those who contract directly with the subcontractor. . . . But this method of protection is generally inadequate to cope with remote and undeterminable liabilities incurred by an ordinary materialman." Id. Therefore, "[i]t is the substantiality of the relationship which will usually determine whether the prime contractor can protect himself, since he can easily require bond security or other protection from those few 'subcontractors' with whom he has a substantial relationship in the performance of the contract." Id.
In determining the substantiality of the relationship, federal courts have considered thirteen factors: "(1) the product supplied is custom fabricated; (2) the product supplied is a complex integrated system; (3) a close financial interrelationship exists between the companies; (4) a continuing relationship exists with the prime contractor as evidenced by . . . the requirement that the supplier's representative be on the job site; (5) the supplier is required to perform on site; (6) there is a contract for labor in addition to materials; (7) the term "subcontractor" is used in the agreement; (8) the materials supplied do not come from existing inventory; (9) the supplier's contract constitutes a substantial portion of the prime contract; (10) the supplier is required to furnish all the material of a particular type; (11) the supplier is required to post performance bond; (12) there is a backcharge for cost of correcting supplier's mistakes; and (13) there is a system of progressive or proportionate fee payment." (Footnotes omitted.) UnitedStates v. Aetna Casualty Surety Co., 981 F.2d 448, 451-52
(9th Cir 1992)
2.
In its memorandum in support of the motion for summary judgment, Seaboard argues that Premium is a materialman and is, therefore, precluded from recovery against the payment bond. Seaboard lists several factors to support this argument. First, Seaboard argues that Lane's purchase order agreement with Premium only required that Premium provide gravel and sand fill to Lane. Seaboard also argues that although Premium was required to provide gravel and sand fill CT Page 12482-K conforming to contract specifications, Premium did not provide customized or specialized materials. Finally, Seaboard argues that Lane did not delegate performance of the construction work of the North Central Facility to Premium nor did Lane have any control over Premium's other contractual relationships.
In their memoranda in opposition to Seaboard's motions for summary judgment, Transporter and Trevex argue that, based on several factors, Premium is a subcontractor. First, the plaintiffs argue that in the body of the agreement between Lane and Premium, Lane describes the agreement as a "contract agreement." Second, the plaintiffs argue that 100% of the gravel and sand fill was provided by Premium. Third, the plaintiffs argue that the gravel and sand fill account for approximately 20% of the materials for the North Central Facility. Fourth, the plaintiffs argue that because the transportation costs were separately stated on each invoice, because Lane had conversations with Transporter and Trevex's representatives, and because Transporter and Trevex's trucks were on the site on an almost daily basis, the transportation costs associated with the delivery were not so remote as to be unforeseen. Finally, the plaintiffs argue that they were required to meet detailed specifications in mixing the material and that the required materials could not be purchased from a number of unknown sources. In addition to these arguments, Trevex included an affidavit by its president, Trevor Thompson, attesting that "Premium material, Inc. had equipment [sic] on site at the project (bulldozers, rollers) and was involved in spreading and compacting material at the project." Trevex's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, Exhibit 3, ¶ 8.
In its reply memorandum and supplemental memorandum, Seaboard argues that the affidavit does not create a genuine issue of material fact and that the description of the agreement as a contract agreement, the requirement of conforming goods, and the foreseeability of the transportation costs do not transform Premium into a subcontractor.
3.
Several of the factors identified by the parties support Seaboard's conclusion that Premium is a materialman. First, whether a party is determined to be a subcontractor or a CT Page 12482-L materialman is based on substance, not form. As a result, whether Lane refers to its agreement with Premium as a "contract agreement" or a "purchase order agreement" is of little significance in determining whether Premium is a subcontractor or a materialman. Miller Equipment Co. v.Colonial Steel and Iron Co., 383 F.2d 669, 674 (4th Cir. 1967). Moreover, furnishing all of the gravel and sand fill does not make Premium a subcontractor. United States v.Lembke Construction Co, 370 F.2d 293, 295-96 (10th Cir. 1966). Also, requiring the gravel and sand fill to conform to detailed specifications does not make Premium a subcontractor. Id. Additionally, the fact that Premium received fixed payments upon Lane's receipt of goods indicates that Premium is a materialman. United States v. Aetna Casualty SuretyCo., supra, 981 F.2d 454. Finally, the foreseeability of the transportation costs to Lane are not relevant in determining the substantiality of the relationship. F. D. Rich Co. v.Industrial Lumber Co., supra, 417 U.S. 123.
However, two factors support the plaintiffs' argument that Premium was a subcontractor. First, the gravel and sand fill provided by Premium constitutes approximately 20% of the contract materials. Miller Equipment Co. v. Colonial Steel Iron Co., supra, 383 F.2d 675. Second, although Seaboard argues that Premium only provided gravel and sand fill, Trevex argues that Premium equipment, such as bulldozers and rollers, was utilized on the construction site to spread and compact material. Trevex's Memorandum of Law in Opposition to Defendants Motion for Summary Judgment, Exhibit 3, ¶ 8. Seaboard acknowledges that Lane did rent Premium trucks to haul fill and waste off-site and, on two occasions, to move gravel and sand fill from one area of the construction site to another. Affidavit of Noel Ames, ¶ 5; Supplemental Affidavit of Richard D. Stapleton ("Stapleton Affidavit"), ¶ 8. However, Seaboard disputes that Premium performed any duties on the construction site, provided labor to Lane, or was delegated any portion of the North Central Facility contract. Stapleton Affidavit, ¶¶ 8-9, 12, 14. Alternatively, Seaboard suggests that even if Premium equipment was on site or if Lane rented the equipment from Premium, under General Statutes § 49-42 (c),[1] Premium would still be considered a materialman.Gulf States Enterprises v. R.R. Tway, Inc., 938 F.2d 583, 587
(5th Cir. 1991).
As a result of this equipment issue, it appears to this CT Page 12482-M court that there is a genuine issue of material fact as to whether Premium only supplied gravel and sand fill or whether Premium performed duties on the construction site and provided labor to Lane. Thus, there is a genuine issue of material fact as to whether Premium is a subcontractor or materialman and, consequently, whether Transporter and Trevex can recover under General Statutes § 49-42(a).
Accordingly, Seaboard's motions for summary judgment with respect to Count Two of Transporter and Trevex's substituted complaints are denied.
Berger, J.