[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT OF PLAINTIFFAND CROSS MOTION FOR SUMMARY JUDGMENT BY DEFENDANT CITY OF HARTFORD
On or about September 31, 1991 defendant Stack Contracting, Inc. ("Stack") was issued purchase order No. 111264 by the defendant City of Hartford ("City") for soil excavation, and the removal and replacement of an underground gas storage tank ("UST") at the City's public works yard at 40 Jennings Street, Hartford, Connecticut ("Project"). As part of its contract with the City, Stack agreed to supply all materials necessary to remove and replace the defective UST.
On or about September 4, 1990 Stack entered into a contract with the plaintiff, Ten Hoeve Bros., Inc. ("Ten Hoeve") whereby Stack was able to purchase materials from Ten Hoeve on an open account. Among the materials sold to Stack on this open account were materials to be used by Stack at the Project. Stack failed to pay for $24,301.74 worth of materials and equipment it had purchased from Ten Hoeve for use at the Project.
On or about June 29, 1992, Ann Del Mastro, Ten Hoeve's Credit Manager, gave oral and written notice to Raymond Miller of the City's Public Works Department that Stack had failed to pay for $24,301.74 worth of materials and equipment used by Stack at the Project and requested payment from the city.
The City refused to pay Ten Hoeve for the materials used by Stack at the Project, even though purchase order No. 111264 had a $99,547.74 balance when it received Del Mastro's letter on July 1, 1992.
At least $20,000 remained in purchase order No. 111264 until February, 1993. This action was commenced on April 7, 1993. The CT Page 4213-A plaintiff seeks partial summary judgment on the first count of its Amended Complaint (Equitable Lien). The defendant city of Hartford has filed a cross motion for summary judgment as to this count and also as to the seventh and eighth counts of the complaint. The rules regarding motions for summary judgment are well-known. The dispute between the parties is not so much a factual as a legal dispute.
1.
I believe the defendant City should prevail on its motion for summary judgment as to counts seven and count eight.
Count seven of the amended complaint alleges the city breached its statutory duty (§ 49-41) by not requiring a payment bond. The city had no such duty — the language of the statute requires the contractor not the governmental agency to obtain a payment bond.O G v. Town of New Milford, 229 Conn. 303, 311 (1994).
The eighth count must similarly fail. In that count the plaintiff claims the city was negligent since it failed to ensure that the general contractor secured a payment bond. There can be no cause of action. For negligence without a duty and fault in the performance of that duty. As just indicated no such duty was owed to the plaintiff by the city in the procurement of the payment bond.
2.
The plaintiff has brought an equitable lien action based on and directed to the fact that at the time it notified the city that Stack had not paid the plaintiff, funds existed in a purchase order created by the city so that Stack could complete the project.
Equitable liens are well-known to the courts though their use and thus litigation surrounding them has declined over the years with the creation of statutory liens of various sorts. Such liens are generally discussed in The Law of Restitution. Palmer Vol. I, § 1.5 (1978), Pomeroy's Equity Jurisprudence, Vol. I, § 165 et seq., 51 Am.Jur.2d § 22 et seq., Restatement of Restitution, § 161; an ALR article deals with a topic related to the issue now before the court, "Building and Construction Contracts: Contractor's Equitable Lien Upon Percentage of Funds Withheld by Contractee or Lender", 54 ALR 3d 848 (1973). Connecticut courts have recognized the concept of equitable liens, Witaker v. Williams, 20 Conn. 527, 531 (1850), CT Page 4213-BHansel v. Hartford-Connecticut Trust Co., 133 Conn. 181, 194
(1976), Employers' Liability Assurance Corp. v. Crandall,22 Conn. Sup. 404, 406 (1961).
An equitable lien differs from a so-called common law lien because the latter lien involves the right to retain property until a debt or demand due the party retaining the property is satisfied; under an equitable lien possession remains with the debtor or the person against whom the demand is made; Forster v. Thornton,179 So. 882, 892 (Fla. 1937).
An equitable lien can be based on an express or implied contract but as one case said: "The trend of modern decisions is to hold that in the absence of an express contract, a lien based upon the fundamental maxims of equity may be implied and declared by a court of equity out of general considerations of right and justice as applied to the relationship of the parties and the circumstances of their dealing", Calaurcio v. Levson, et al.,215 N.E.2d 839, 841 (Ill, 1966). Other courts have used similar broad language in a variety of different factual situations, Caldwell v.Armstrong, 342 F.2d 485, 490 (CA 10, 1965). Equitable liens are said to be based on doctrines of unjust enrichment, Caldwell v.Armstrong, supra. Although deception of fraud may be involved wrongdoing is not an essential element for the imposition of such a lien, Gulf Shore Dredging Co. v. Ingram, 193 So.2d 232, 234 (Fla, 1966). There must be some ground for equitable intervention including the absence of an adequate remedy at law, Id. at p. 234,Architectonics Inc. v. Salem-American Ventures, 350 So.2d 581, 584
(1977) and it has been held that there must be some superior right vis-a-vis other creditors by the party asserting the lien, CentralContractors Services Inc. v. Ohio County Ston. Co., 255 S.W.2d 17,21 (Ky, 1952).
As the above referenced ALR article indicates equitable lien doctrine has been applied in litigation by various parties arising out of disputes over various claims for failure to pay under construction contracts. There is authority for allowing an equitable lien to suppliers in factual situations similar to the one now before the court. In the case of Active Fire SprinklersCorp. v. US Postal Service, 811 F.2d 747 (CA 2, 1987) a subcontractor asserted equitable rights to a discrete fund referred to in the case as "the Contract Balance" held by the Postal Service at the time the subcontractor brought its lien action. The court referring to Henningsen v. USFG, 208 U.S. 404, 410 (1908) and earlier Second Circuit cases said at page 755." It is not new law CT Page 4213-C that unpaid subcontractors hold an equitable interest in a contract balance owed by a building owner to a general contractor."
In Penninsulcer Supply Co. v. CB Day Realty, 423 So.2d 500
(Fla. 1982) an insolvent subcontractor defaulted on its contract to pay a company that supplied materials for the construction job. The material supplier failed to perfect its mechanics lien because it did not file notice within the statutory period. There remained a pool of undistributed construction funds. The material supplier then brought an action against the owner and general contractor to impress an equitable lien upon these undisbursed construction funds. The Florida court first held that its mechanic's lien statute didn't abrogate the right to an equitable lien. The court then went on to say at page 503: "Appellees as owner and general contractors have no right to title or interest in any funds remaining except as security for the payment of materialmen servicemen (sic) or laborers who, like appellant, remain unpaid by reason of a breach of contract by a subcontractor, and the court will not permit retention by the owner or general contractor of funds which in equity and good conscience belong to an unpaid supplier", also see Archetonics Inc. v. Salem-American Ventures,350 So.2d 581, 584 (Fla. 1977).
It could be argued that whatever the general law of equitable liens might be an equitable lien should not be permitted here because this plaintiff as a supplier of materials would have been protected in its claim if a bond had been filed pursuant to Section 49-41 of the general statutes which is entitled "Public structures. Bonds for protection of employees and materialmen." However, nothing in our case law or statutes would seem to prevent an unpaid materialmen or supplier from resorting to other legal remedies they might have had antedating the passage of section 49-41. O GIndustries Inc. v. New Milford, 229 Conn. 303 (1994) is certainly no authority to the contrary. In that case a materialman brought an action against the defendant town based on § 49-41 because it had failed to secure a payment bond under the statute. The court merely held at pp. 311-12 that under § 49-41 the legislature: "did not intend to impose upon the state or its subdivisions the duty to obtain a payment bond for the protection of subcontractors. Under the statute it is the obligation for the general contractor to furnish the bond and the responsibility of the subcontractor to assure itself that the bond had been posted. Because the defendant (town) owed no legal duty to the plaintiff to obtain the payment bond required by § 49-41 the appellate Court properly concluded the defendant was entitled to summary judgment." CT Page 4213-D
The plaintiff here does not base its claim on § 49-41 and it would be an odd interpretation of an ameliorative statute to say that because a company in the class of entities sought to be protected by ameliorative legislation doesn't take advantage of the protection afforded by a particular statute then that party cannot resort to common law or equitable remedies that pre-existed the legislation. The legislature must be presumed to have known of the legal or equitable remedies available to parties at the time it passes legislation. Where a statute creates a new right or remedy for a perceived wrong a common law or equitable remedy that has also been aimed at that wrong but perhaps less efficiently should not be precluded. A statute should not be construed as changing the common law unless statutory language requires such an interpretation, cf Skorpios Properties Ltd. v. Waage, 172 Conn. 153,155-56 (1976).
All of this is especially so in light of the fact that our payment bond statute relates only to the creation of a remedy for subcontractors as against sureties. Apart from the question of governmental immunity why should anything in the § 49-41 be taken to limit the rights of subcontractors vis-a-vis the state or its subdivisions, cf Active Fire Sprinkler Corp. v. U.S. PostalService, 811 F.2d at pp. 754-55? Or put another way how can the city fairly say because § 49-41 was passed to give subcontractors rights against some third party-sureties, that means any rights subcontractors might have had against the city have been abrogated by that statute? Such a result should only be arrived at if explicit statutory language requires it — then, of course, the constitutional issues that such a result would raise can be dealt with by the courts.
Neither can it be said that if an equitable lien, such as the one proposed here, could be placed against property of the state or its subdivision §§ 49-41 and 49-42 would be rendered nullities. The plaintiff is not making a claim that it has a right to generally attach government property and accounts. Its lien is only directed at specific funds allocated for the completion of a contract and its claim cannot exceed the amount of such funds no matter how great the value of the materials it delivered to the job site. The protections afforded materialmen and suppliers under § 49-41 and49-42 are much broader. It is difficult to see how the state or one of its subdivisions can preclude a lien action against such specifically allocated funds merely because the legislature has provided an alternative mechanism to suppliers on a bond and CT Page 4213-E against sureties. Our statutes and the federal Miller Act which it was modeled on was enacted because liens could not be placed upon government property. But there is certainly no indication that our payment bond statute or its federal counterpart were enacted to forestall the placement of liens on government funds where such a remedy was not otherwise barred by governmental immunity.
Our payment bond statute is modeled on the Federal Miller Act, 40 U.S.C. § 270a-270f. When the Miller Act was created it was deemed necessary because subcontractors were unable to assert liens against government property due to governmental immunity, U.S. v.Ansonia Brass Copper Co., 218 U.S. 452, 471 (1910). But the right of a subcontractor to an equitable lien as such apart from the question of government immunity was recognized by federal courts cf Hennington v. USFG supra, Active Fire Sprinkler Corp. v.U.S. Postal Service, supra.
Connecticut's Supreme Court has noted that our payment bond statute was modelled on the Miller Act and at least in interpreting § 49-41 has suggested that our statute be interpreted in conformity with the Miller Act, International Harvester Co. v. L.G. DeFelice Sons, Inc., 161 Conn. 325, 331 (1964), American Mason's SupplyCo. v. F.W. Brown Co., 174 Conn. 219, 223 (1978). Because of this it is appropriate to refer to federal case law not only to interpret § 49-41 — it was modelled on federal legislation — but also to examine federal case law insofar as it concerns itself with the availability of common law or equitable remedies to subcontractors despite the protections afforded by the Miller Act. Such decisions are of course not binding but they are persuasive and this is especially so of Second Circuit Court of Appeals case. Ultimately it would be to the advantage of owners, general contractors, subcontractors, suppliers and government agencies, developers and insurers if there were to be a uniformity of state and federal opinions which govern the construction activities of people and companies operating in the same geographical area.
As noted in Active Fire Sprinkler Corp. v. U.S. PostalService, supra an equitable lien filed by a supplier against a "Contract Balance" fund was permitted despite the existence of the federal payment bond statute. The Active Fire Sprinkler Corp., is not distinguishable from the case now before the court at least on the basis of a different factual scenario regarding the federal payment bond statute and the situation regarding the failure to procure a payment bond in this case. In fact arguably the ActiveFire Sprinkler case presents a stronger case for denying an CT Page 4213-F equitable lien to a subcontractor than the facts here. In ActiveFire Sprinkler a Miller Act payment bond had been secured for the job but a district court judge had held that the plaintiff subcontractor could not intervene in the bond action since it had failed to sue timely on the bond. The Miller Act requires suit must be brought by suppliers within one year of delivering materials to the job, 811 F.2d at page 750. In effect there was no payment bond or rights under any such bond that the plaintiff could rely upon and the plaintiff brought an equitable lien action. If the federal model or the practice of the Florida courts were to be adopted it might be said an equitable lien should be allowed here.
But it must be said that the mere fact that certain federal or state cases have permitted an equitable lien to suppliers in certain construction contract cases and that the Federal payment bond statute has been held not to bar such a common law remedy does not mean that our state should recognize this remedy. Nor does it mean that even if it does that the remedy should be applied against an owner that is a government agency the state or its subdivisions. It certainly does not mean that under the facts of this case that this lien action should prevail.
The previously mentioned article on "Liens" in 51 Am.Jur.2d at sections 22 et seq. pp. 160 et seq. makes clear as several of the cases cited by the defendant do also that the various states have very different views about the equitable lien remedy. Some states do not recognize it at all, other states put severe limitations upon it and require there to be an underlying debt between the supplier and the owner or imply that there must be an express or implied contract providing for the placement of such a lien. On the other hand some courts like the Florida courts and federal courts use very broad language to justify the placing of such liens in a situation like the one now before the court. I've cited some of those cases, they use language about unjust enrichment and simple fairness. "Unjust enrichment" is a vague and pliable term, however, and in deciding whether an equitable lien should be allowed the particular facts of a case have to be examined and the effects of a decision allowing such a lien in a particular industry. The court will proceed to do that not only to determine whether the concept of equitable liens should be recognized generally but also in terms of whether such a lien should be permitted here.
The facts and circumstances of this case are not particularly unusual. The owner of a property site has to have construction CT Page 4213-G work of some type performed. The owner hires a general contractor who in turn hires subcontractors and various subcontractors and suppliers and materialmen perform work at the site or deliver suppliers and materials which are used to complete the job. The owner only dealt directly with the general and itself has no contractural relationship with subcontractors or suppliers. The owner makes periodic payments to the general but for some reason falls behind in the se payments or gets into financial difficulty and cannot complete the job. Subcontractors or suppliers can protect themselves by a mechanics lien; when a government job is involved a payment bond can be secured. Absent such statutory remedies the subcontractors or suppliers may have a problem in collecting for their labor or material from the owner. It's said there's no privity of contract — a magic word dictating no recovery should be allowed. In the ordinary case where a stranger puts improvements on land without consent of the owner it is easy to see why such a rule should prevail. The opportunity for an owner to be taken advantage where there is no contractural agreement is obvious. But the equity courts have made exceptions to this general rule where the circumstances of a case would make it unfair to apply such a rule. A claim is allowed against the owner for example when the owner encourages the stranger to proceed with improvements or where one of the parties acts in ignorance of the true facts but the owner remains silent when the owner could have prevented the stranger from operating under the delusion that he or she was going to be compensated. Robinson v. Robinson,429 N.E.2d 183, 188-89 (Ill., 1981).
In a construction contract it would be difficult for an owner to say it was not aware subcontractors and suppliers were engaged in activities that would be of benefit to the owner. But the owner relies on the fact it has engaged a general contractor and has made contract payments to it which the owner in the ordinary case has a right to presume the general will use to compensate subcontractors and suppliers. If the general through its own fault or mismanagement fails to do this it is difficult to see how a claim could be allowed against the owner since the owner may then be making double payments, could never estimate costs and construction activity might thus come to a halt.
But as noted mechanics lien and payment bond statutes have been created to protect subcontractors and suppliers despite these general rules.
What if, however, the subcontractor or the supplier did not or CT Page 4213-H could not place a mechanic's lien? What if no payment bond was procured? What if the subcontractor or supplier has no one to blame but itself for failing to perfect or act upon the mechanic's lien or started the job or delivered material knowing there was no payment bond? No one would argue that having failed to utilize these self-protective devices the subcontractor or supplier would be in a better position than they would have been before these statutory devices were enacted — that it is still true that no direct claim would be allowed against the owner.
But the possibility of unfairness to the subcontractor and supplier still remains. In other words these people did work or supplied material, an owner is benefited and the owner knew before the job the benefit would be received. Admittedly for the reasons noted a direct claim cannot be allowed against the owner if he made his contract with the general who in turn hired the subcontractors and suppliers. But these reasons are based on the need to avoid double costs, the need to allow owners and developers to calculate costs accurately and the importance of these considerations if construction activity is going to take place at all.
However, where the particular circumstances of a case are such that these reasons no longer apply then if a court can provide an equitable remedy to subcontractors and suppliers, why shouldn't it do so?
In other words in the peculiar and discrete case where no mechanics lien or payment bond is available, where a benefit was provided to an owner which the owner was well aware of, where an owner has allocated monies already for the general which have been put in a special account, where a portion if not the bulk of these monies were to go to pay subcontractors and suppliers, why shouldn't the courts use an equitable lien to protect unpaid subcontractors and suppliers at least where the project has been completed? There is no question of double payment since the money is already allocated, the allocation represents cost estimates that were already made for the job. The equitable lien would only apply to a specific fund and not generally to the assets of the party against whom the claim is made even if that fund did not satisfy the full claim of the party asserting the lien. Such a view comports with the position courts have taken with regards to equitable liens — they are so-called "floating equities" until the jurisdiction of a court is invoked directed against a specific chattel or fund which in some sense represents partial or complete satisfaction of the claim the party who wishes to impose the lien CT Page 4213-I is advancing, Clement v. Homes, 120 S.W.2d 988, 993 (Tenn. 1933), cfNelson, et al. v. Nelson Neal Lumber, et al, 17 P.2d 626, 628
(Wash., 1932), Caldwell v. Armstrong, 342 F.2d 485, 490 (CA 10, 1965).
Thus some of the dire predictions of municipal paralysis made by the defendant city if the court were to entertain the possibility of the imposition of an equitable lien are not realistic at least where the lien is allowed against an identified fund set aside by the city itself and the project is completed.
The circumscribed way in which an equitable lien should be allowed to operate also answers the defendant city's broad claim that governmental immunity should in all cases preclude the imposition of an equitable lien on a contract balance. The defendant correctly notes that a municipality is entitled to governmental immunity in the performance of governmental functions,Ryszkiewicz v. New Britain, 193 Conn. 589, 593 (1984). Such immunity protects a city from liability for governmental acts performed for the public which are discretionary in nature as opposed to being ministerial and this performed without the exercise of judgment or discretion, Heigl v. Board of Education,218 Conn. 1, 4 (1991). It is also true that there is no statute as in Active Fire Sprinkler Corp. v. US Postal Service, 811 F.2d at page 752 which specifically authorizes suit and the plaintiff had no direct contractural relationship with the defendant city.
But in a case at least where a contract is completed and a special fund denominated a contract balance exists (as in ActiveFire Sprinkler) the governmental immunity argument doesn't seem to be very convincing. Where is the discretionary activity? The funds have already been purposely put into a special account the only question is whether they should be subject to an equitable lien or whether the government should be allowed to withdraw the funds and use them for other activities having nothing to do with the original purpose for which the fund was created. Also governmental immunity like any other immunity can be waived. Where a city puts funds into what is in effect a contract balance account to pay the general contractor, who the city must be taken to know will use a portion of the funds to pay subcontractors or suppliers, how can it rely on governmental immunity if a court decides it would be inequitable not to impose a lien on the contract a balance fund. A court would not be interfering with ongoing governmental operations but would merely be preventing the municipality from being unjustly enriched by transferring specifically allocated CT Page 4213-J funds back to the general treasury despite receiving the benefit for the payment of which the funds were allocated in the first place. The question still remains as to how this general analysis applies to the facts of this case and this analysis also leads to certain problems with the plaintiff's request for an equitable lien based on those facts.
Here while the project was still going on the plaintiff claims to have given oral and written notice to an official at the city's Public Works Department that the general contractor had failed to pay for certain supplies. Under such circumstances it would be unacceptable and even create some mischief to hold that any equitable lien later fixed on by a court should reflect the amount in a purchase order account created for the general contractor's expenditures at the time notice of non-payment was given by the supplier. At the time the notice was given the owner, or here the city, had no particular obligation to pay the supplier itself, it would be difficult to say there had been unjust enrichment where the job hadn't even been completed, and such a rule might breed chaos. Construction projects would just stop and under the guise of enforcing an equitable principle through creation of a lien the court would end up assigning priorities to the claims of particular suppliers and materialmen. From another perspective there would be also real infringement on the objectives sought to be achieved by the doctrine of governmental immunity if such a result were to be reached at least where the owner is a municipality. The activities of the municipality in disbursing funds upon receipt of the notice from an unpaid supplier during the middle of a job would be directly affected — activities which would be clearly discretionary.
The very nature of an equitable lien is that it is not operative until court action is taken and then it attaches only as to existent chattels or undisbursed funds, see Restatement of the Law: Restitution § 161 comment (e): "An equitable lien can be established and enforced only if there is some property which is subject to the lien", see also § 215(1) of the Restatement.
Neither is this a case like Kennedy Electric Co. v. U.S.Postal Service, 508 F.2d 954 (CA 10, 1974) where a supplier was held to have an equitable lien on the equivalent monies paid out by the owner-developer after the latter knew of the fact that the supplier had not been paid. In that case the progress payments that were made were done so in violation of government regulations and were wrongful. Certainly the government or no one else should be allowed to escape possible liability or better put exhaust a CT Page 4213-K fund that rightfully should be available to an unpaid supplier by making wrongful payments — equity should be able to stretch far enough to cover such a situation and the Tenth Circuit concluded it did. But there can be no claim here that after notice of non-payment was given expenditures made in the middle of the project and merely to complete it were wrongful — no violation of any statute, regulation or contract provision has been brought to the court's attention. Therefore I do not believe an equitable lien should be permitted to the amount of $99,574.74 — the amount in the purchase order when notice of non-payment was given by the plaintiff.
As to the $20000 remaining in the purchase order when it was closed out in February 1993 a different question may be presented. The project still had not been completed and the close out occurred before suit was brought so it could be asked — what is the equitable lien going to attach to? As the Restatement indicates if the fund cannot be traced on what is the equitable lien to attach. If the chattel or fund cannot be traced then there is only a personal claim against the city but no such personal claim is appropriate by the subcontractor.
On the other hand I am not quite clear on how or more exactly for what purposes the purchase order was closed out. If it was closed out with the money just going to the city's general fund, or if the money was used to complete phases of or aspects of the project not contracted for with the general contractor then it might be a logical extension of the equitable principles here discussed to say that the city should not be allowed to do this. If the monies were used merely to complete the project in the manner that the general contractor had agreed to then I do not believe an equitable lien would be appropriate — to what is it to attach and how could it be improper for the city to complete the project. Absent my ability to resolve these just mentioned factual questions I do not believe the plaintiff's motion or the defendant's cross motion for summary judgment should be granted as to the first count of the plaintiff's complaint.