[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 5188 RE: MOTION TO STRIKE
The plaintiff, Cioffoletti Construction Company, Inc. (CCC) commenced this action against several defendants, seeking payment of approximately $58,000 for supplying screened topsoil in connection with a project to close the city of Danbury municipal landfill.
Two defendants, Metcalf and Eddy, Inc. (M E) and St. Paul Fire and Marine Insurance Co. (sued herein under its former name, United States Fidelity Guaranty Co.) (St. Paul), have moved to strike certain counts of the CCC complaint directed at them. Specifically, the motion focuses attention on those counts involving General Statutes §§ 49-41 and 49-42, known as the Little Miller Act, which are modeled on the provisions of federal law known as the Miller Act, 40 U.S.C. § 270 (a)-(d). The Little Miller Act provides generally that in connection with the construction, alteration or repair of any state or municipal building or other public work, the general or prime contractor shall provide a bond for the protection of persons supplying labor or materials. The overriding issue of the motion to strike is whether CCC has the legal right to seek payment from the bond.
 I SCOPE OF REVIEW
For the purpose of making a motion to strike, the moving party admits all well pleaded facts. RK Constructors, Inc. v. Fusco Corp.,231 Conn. 381, 383 n. 2 (1994). If a pleading alleges legal conclusions without supporting allegations of fact, it may be subject to being stricken. Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 215 (1992). In reviewing a motion to strike, the facts in the pleading must be construed in favor of the pleader. Faulkner v.United Technologies Corp., 240 Conn. 576, 580 (1997). What is necessarily implied in an allegation need not be expressly alleged. Pamela B. v.Ment, 244 Conn. 296, 308 (1998).
 II DISCUSSION
CCC, M E, and St. Paul agree that the major issue raised by the motion to strike is the interpretation of the provisions of General Statutes §§ 49-41 and 49-42 as to the type and scope of bond required. All parties also recognize that the Connecticut Supreme Court CT Page 5189 has stated that interpretations of the Miller Act on the federal level should provide guidance for interpretation of Connecticut's Little Miller Act. See O G Industries, Inc. v. New Milford, 229 Conn. 303, 309
(1994); American Masons' Supply Co. v. F. W. Brown Co., 174 Conn. 219,223 (1978) (legislature intended §§ 49-41 and 49-42 to operate in conformity with the Miller Act).
General Statutes § 49-41 requires a general contractor on a public work project to provide a surety bond to the state or municipality to guarantee payment to those who supply work or material to the project. General Statutes § 49-42 states, in relevant part:
 Any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing the payment bond shall have a right of action upon the payment bond. . . .
Two United States Supreme Court cases have authoritatively construed important provisions of the federal Miller Act. In MacEvoy v. UnitedStates, 322 U.S. 102 (1944), the court, relying heavily on the legislative history, concluded that the right to bring suit on a payment bond under the law was limited to those who dealt directly with the primary contractor or who had a direct contractual relationship with a subcontractor. Subsequently, the Supreme Court held that the protections of the payment bond "extended no further than to sub-subcontractors." J.W. Bateson Co. v. Board of Trustees, 434 U.S. 586, 591 (1978). Connecticut courts have interpreted the statute in the same fashion. "The right of action under a payment bond is statutorily limited under §49-42 (a) to those having a direct contractual relationship with a project contractor or subcontractor." Dysart Corp. v. Seaboard Surety C.,240 Conn. 10, 19 (1997); see also American Masons' Supply Co. v. F. W.Brown Co., supra, 174 Conn. 226-227.
 A The Allegations of the Complaint
The CCC complaint alleges the following:
 (1) the defendant, City of Danbury, contracted with M E as general contractor of the City to oversee and complete the closure of the Danbury Municipal landfill (Amended Complaint, First Count, paragraph 6);
 (2) M E hired defendant Poole Kent of New CT Page 5190 England, Inc. ("Poole") as general contractor to oversee and complete the closure of the landfill (Amended Complaint, First Count, paragraph 7);
 (3) Poole hired defendant J.C. Barrett Sons, Inc. (Barrett) as general contractor to oversee and complete the closure of the landfill (Amended Complaint, First Count, paragraph 8);
 (4) Barrett hired CCC to provide screened topsoil for the landfill which was necessary for the closure (Amended Complaint, First Count, paragraph 9);
 (5) CCC is owed $58,000 (Amended Complaint, First Count, paragraph 12);
 (6) M E obtained a payment bond from St. Paul in the amount of $8.9 million (Amended Complaint, Sixteenth Count, paragraph 25);
 (7) St. Paul has denied payment on the claim against the bond made by CCC (Amended Complaint, Second Count, paragraph 15).
In its twelfth count, CCC seeks to reform the contract between M E and Poole to provide for bond coverage for CCC and to reform the bond to provide coverage for CCC. In the thirteenth count, the CCC complaint seeks a declaratory judgment that CCC's materials and services are covered by the existing bond. In the fourteenth count, the complaint seeks to have the contract, presumably between Danbury and M E, declared void, because the existing bond does not cover CCC.
The sixteenth count alleges that M E acted negligently toward CCC by, among other things, not obtaining a bond in conformance with §§49-41 and 49-42. The seventeenth count alleges that CCC is a third-party beneficiary of the contract breached by M E.
In four counts against St. Paul (numbers thirty-six through thirty-nine), CCC alleges that: St. Paul failed to provide a bond in conformance with §§ 49-41 and 49-42; the Superior Court should declare that CCC's claim is covered under the existing bond; the contract between M E and St. Paul for the bond is void; and St. Paul has breached its contract with M E, and CCC, as third party beneficiary, has been damaged.
 B CT Page 5191 Contentions of the Parties
M E and St. Paul assert that CCC is not afforded protection of bond under the provisions of §§ 49-41 and 49-42. They point to the allegations of the complaint which spell out the contractual hierarchy on the Danbury landfill closure project. As set forth above, Danbury contracted with M E, which pursuant to § 49-41 procured the payment bond. M E contracted with Poole which in turn contracted with Barrett which hired the plaintiff CCC. M E and St. Paul contend that M E is the general or prime contractor, Poole is a subcontractor, and Barrett a sub-subcontractor. Since the only contract CCC alleges it had was with Barrett, the defendants argue that CCC did not have a contractual relationship with a subcontractor, and therefore, the Connecticut statutes did not require a payment bond to cover claims by CCC.
CCC argues that it supplied work and materials used in the landfill closure project and it should be covered by the payment bond. It contends that the Connecticut Supreme Court in American-Masons' did not rely on the concept of tiers of subcontracts. It contends that Barrett is a subcontractor and that it had a contract with Barrett, thereby making it a covered claimant eligible for payment under the bond. CCC cites the case of Semco Manufacturing, Inc. v. B-G Mechanical Contractors, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 522990 (April 22, 1994, Hale, J.T.R.), in support of its contentions. Indeed, the Semco case does support CCC's position in that it criticizes the classification of subcontractors and held a claimant in a position analogous to CCC entitled to recover under the bond.
 C Discussion
After careful review, this court concludes that M E and St. Paul have the better of the argument. First, the interpretation of the federal Miller Act by the United States Supreme Court was based squarely on legislative history which itself supports the concept of dividing "subcontractors" into tiers. Both the Senate and House of Representatives committees' reports discussing and recommending passage of the Miller Act stated:
 A sub-subcontractor may avail himself of the protection of the bond. . . but that is as far as the bill goes. It is not felt that more remote relationships ought to come within the purview of the bond. CT Page 5192
Quoted in J.W. Bateson Co. v. Board of Trustees, supra, 434 U.S. 586,591; see also MacEvoy v. United States, supra, 322 U.S. 102, 108 n. 5. Connecticut courts have also adopted this classification system. InAmerican Masons', our Supreme Court held in favor of the plaintiff which had a contract with B G. The court set forth the critical question: Was B G a subcontractor? When it found that B G was both a subcontractor and a sub-subcontractor, the plaintiff prevailed.
Connecticut Superior Court decisions have, with the exception of Semco, held that parties lower on the subcontractor hierarchy than sub-subcontractor cannot prevail on the payment bond required by the Little Miller Act. Northeast Waste Systems, Inc. v. Connecticut AbatementTechnologies, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 419724 (May 31, 2000, Alander, J.) (allowing recovery on the basis that the bond coverage exceeded what was required by statute); Bleiler v. Metcalf Eddy Inc., Superior Court, judicial district of Hartford at Hartford, Docket No. 580066 (February 17, 1999,Fineberg, J.); Summit Crane Co. v. Continental Metalcraft, Superior Court, judicial district of New Haven, Docket No. 035564 (September 26, 1996, Corradino, J.).
The hierarchy of contracts and subcontracts set forth in the amended complaint indicate that M E was the general or prime contractor, that Poole was a subcontractor, and Barrett was a sub-subcontractor. As a subcontractor to a sub-subcontractor, CCC would not fall within the ambit of payment surety bond required under § 49-41. CCC contends that it has alleged that both M E and Poole are general contractors, and therefore, Barrett is only a subcontractor. However, calling Poole a general contractor does not make it so, and the pleading as it stands indicates Poole is a subcontractor. Fortifying this conclusion is the holding that Barrett was a sub-subcontractor in a case involving the very same landfill project and contractual set up. Bleiler v. Metcalf Eddy.Inc., supra.
 III CONCLUSION
The court holds that General Statutes §§ 49-41 and 49-42 do not obligate M E to provide a bond covering CCC's claim. Based on that conclusion, the court orders counts twelve, thirteen, and fourteen stricken. The court orders so much of count sixteen stricken as alleges that the negligence of M E was the failure to procure a bond required by §§ 49-41 and 42. The court orders counts thirty-six, thirty-seven, and thirty-eight stricken. Counts seventeen and thirty-nine allege that CT Page 5193 CCC is a third party beneficiary of a contract. The only basis alleged to support these claims is the requirements of §§ 49-41 and 49-42; therefore, these counts are stricken.
ADAMS, JUDGE.